**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MAGNESIUM MACHINE, LLC, an Oklahoma )
limited liability company; MAGNESIUM )
HOLDINGS, LLC, an Oklahoma limited liability )
company; and PARAMOUNT DESIGN, LLC, an )
Oklahoma limited liability company, )
      )
      Plaintiffs, )  **1:19 CV 2818**
      )
vs. )  Case No. _____
      )
TERVES LLC, a Nevada limited liability company; )
and MCDONALD HOPKINS LLC, an Ohio )  JUDGE OLIVER
limited liability company, )
      )  MAG. JUDGE BAUGHMAN
      Defendants. )

## VERIFIED COMPLAINT

Plaintiffs Magnesium Machine, LLC, Magnesium Holdings, LLC, and Paramount Design, LLC (collectively "Magnesium Machine"), for their Complaint against McDonald Hopkins, LLC ("McDonald Hopkins") and Terves LLC ("Terves") (collectively "Defendants"), state as follows:

## THE PARTIES

1.    Magnesium Machine, LLC is a limited liability company organized and existing under the laws of the State of Oklahoma, having a place of business at 5305 Robert Lee Rd., Duncan, OK 73533.

2.    Magnesium Holdings, LLC is a limited liability company organized and existing under the laws of the State of Oklahoma, having a place of business at 5305 Robert Lee Rd., Duncan, OK 73533.

1

3.      Paramount Design, LLC is a limited liability company organized and existing under the laws of the State of Oklahoma, having a place of business at 5305 Robert Lee Rd., Duncan, OK 73533.

4.      McDonald Hopkins is a limited liability company organized and existing under the laws of the State of Ohio, having a place of business at 600 Superior Avenue, East, Suite 2100, Cleveland, OH 44114.

5.      Terves is a limited liability company organized and existing under the laws of the State of Nevada, having a place of business at 24112 Rockwell Drive, Euclid, OH 44117.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1332 and 18 U.S.C. § 1836, as it involves substantial claims arising under the Defend Trade Secrets Act, together with other related claims under state law, and it involves claims between citizens of different states where the amount in controversy exceeds $75,000. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1332 and has subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367, since those claims are joined with substantial and related claims under federal law.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) in that, among other things, Defendants reside in this District, and a substantial part of the events or omissions giving rise to the claims herein have occurred, and continue to occur, in this judicial district.

8.      This Court has personal jurisdiction over Defendants, which reside in, are located in, and conduct business within, the State of Ohio and within this District.

## NATURE OF ACTION

9.      This is an action against Defendants for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.* ("DTSA"); violation of the Ohio Uniform Trade Secrets Act, R.C. Chapter 1333, Uniform Trade Secrets Act ("OHUTSA"); and violation of the Oklahoma Uniform Trade Secrets Act, Okla. Stat. tit. 78, § 85 *et seq.* ("OKUTSA").

## FACTUAL BACKGROUND

### A. Magnesium Machine's Business and Development of Proprietary Products and Methods

10.      Magnesium Machine, since at least 2014, has been engaged in the business of developing products and methods for degrading and degradable downhole tools used in the oil and gas industry. Specifically, Magnesium Machine is engaged in the business of developing products and methods for degrading and degradable downhole tools comprising magnesium.

11.      In the oil and gas industry, a wide variety of downhole tools are used within a wellbore in connection with producing hydrocarbons or reworking a well that extends into a hydrocarbon producing subterranean formation. For example, some downhole tools, such as fracturing plugs (i.e., "frac" plugs), bridge plugs, and packers, may be used to seal a component against the casing along a wellbore wall or to isolate one pressure zone of the formation from another.

12.      After the production or reworking operations are complete, the downhole tool must be removed from the wellbore to allow production or other operations to proceed without being hindered by the presence of the downhole tool. Removal of the downhole tool(s) is traditionally accomplished by complex retrieval operations involving milling or drilling the downhole tool for mechanical retrieval.

3

13.     In order to facilitate such operations, downhole tools have traditionally been composed of drillable metal materials, such as cast iron, brass, or aluminum. These operations can be costly and time consuming, as they involve introducing a tool string (e.g., a mechanical connection to the surface) into the wellbore, milling or drilling out the downhole tool (e.g., breaking a seal), and mechanically retrieving the downhole tool or pieces thereof from the wellbore to bring to the surface.

14.     In other situations, a magnesium alloy, which may be specially doped, is utilized as a degradable downhole tool. The magnesium alloy composition is typically chosen to degrade by galvanic corrosion in the presence of an electrolyte. When the degradation of the magnesium alloy is sufficient to reduce the mechanical properties of the material to a point that the material can no longer maintain its integrity, the downhole tool falls apart or sloughs off.

15.     The specialty magnesium alloys developed for such applications are expensive to produce and have few other uses. In addition, downhole tools made from specialty magnesium alloys do not rapidly degrade at lower temperatures.

16.     Magnesium Machine has invested significant financial and time resources researching and developing numerous proprietary applications to address technical issues associated with the manufacture, use, and operation of magnesium alloy-based downhole tools.

17.     Specifically, Magnesium Machine has developed proprietary products, including dissolving magnesium slips and balls (hereinafter referred to as "Magnesium Slips and Balls"), and discovered a proprietary method of selectively degrading downhole tools in a subterranean formation, where  at least a portion of the dissolvable downhole tool is contacted with a salt-based treatment (hereinafter referred to as the "Salt-Based Treatment") (collectively, with the Magnesium Slips and Balls, the "MM Trade Secret Products and Methods").

18.     Magnesium Machine has taken extraordinary efforts to maintain the secrecy of the MM Trade Secret Products and Methods, including prohibiting disclosure of the existence of the MM Trade Secret Products and Methods outside of the company, aside from its attorneys, all of whom are bound by obligations of confidentiality; and requiring that all employees, consultants, suppliers, customers, and business partners execute nondisclosure and/or confidentiality agreements, even though the MM Trade Secret Products and Methods have not been disclosed to any of them.

19.     In order to capitalize on its discovery of the Salt-Based Treatment, Magnesium Machine is currently seeking patent protection for this proprietary method for degrading downhole tools containing magnesium.

20.     To ensure that its proprietary method remains confidential during prosecution of that application, Magnesium Machine has petitioned for—and been granted—a request for nonpublication of the patent application.

21.     The MM Trade Secret Products and Methods represent extreme value to Magnesium Machine and the oil and gas industry, specifically the market for degrading or dissolving downhole tools, for reasons that will be explained during the course of litigation.

22.     Disclosure of the MM Trade Secret Products and Methods to one highly skilled in the art threatens to disrupt—or even destroy—the current market potential of the MM Trade Secret Products and Methods to Magnesium Machine, especially with the potential loss of Magnesium Machine's first mover's advantage on certain aspects of the MM Trade Secret Products and Methods.

**B. The Litigation Against Magnesium Machine's supplier, Ecometal, Inc., and its principal, Nick Yuan**

23.     On July 15, 2019, Terves filed a patent infringement suit in this Court against Ecometal, Inc., Magnesium Machine's supplier of magnesium, Ecometal's principal, Mr. Nick Yuan, and an unrelated party Yueyang Aerospace New Materials Co. Ltd. That case is styled as *Terves LLC v. Yueyang Aerospace New Materials Co., Ltd. et al.*, No. 1:19-cv-01611 (the "Related Litigation").

24.     Ecometal, Inc. and Mr. Yuan (collectively "the Ecometal Defendants") were served with the summons and complaint in the Related Litigation on August 13, 2019, and moved to dismiss the complaint for failure to state a claim on October 4, 2019.

**(i)     Terves invokes this Court's Local Patent Rules and commences early discovery.**

25.     On October 4, 2019 (*i.e.*, the same day the Ecometal Defendants served their motion to dismiss), counsel for Terves, Defendant McDonald Hopkins, served Terves's first discovery requests in the Related Litigation on the Ecometal Defendants and noted, "[u]nder the Court's Local Patent Rules, discovery begins upon the filing of an answer or Rule 12 motion to dismiss. (*See* L.P.R. 1.3.)" A true and correct copy of McDonald Hopkins' October 4, 2019 letter is attached to this Complaint as Exhibit A.

26.     On October 7, 2019, McDonald Hopkins also served the Ecometal Defendants with notice of Terves's intent to serve a subpoena on third-party Bradley Machine & Design LLC ("Bradley Machine") and noted a response date of October 29, 2019. A true and correct copy of Terves' notice of subpoena is attached to this Complaint as Exhibit B.

27.     On October 14, 2019, counsel for the Ecometal Defendants contacted Terves's counsel regarding a stipulated protective order:

> As the parties have already commenced discovery, we should discuss the protective order to be entered in this case. I note Exhibit A to the local patent rules is a form protective order for patent cases I assume that's where Plaintiff intends to start. Either way, let me know when we can expect a draft.

A true and correct copy of the Ecometal Defendants' letter of October 14, 2019 is attached to this Complaint as Exhibit C.

28.     Terves's counsel responded on October 17, 2019, attaching a draft protective order and stating, "This is based on the ND Ohio's standard order for patent cases, which you reference in your email. The redlines show the proposed changes to the standard protective order." A true and correct copy of McDonald Hopkins letter of October 17, 2019 is attached to this Complaint as Exhibit D.

    **(ii)**    **The Ecometal Defendants and Magnesium Machine learn that Bradley Machine impermissibly produced to Terves's counsel a settlement agreement with Magnesium Machine that discloses the MM Trade Secret Products and Methods.**

29.     On October 24, 2019, counsel for the Ecometal Defendants contacted the registered agent for Bradley Machine, Mr. Stacy McCrackin, and learned that Bradley Machine had already produced documents to Terves's counsel in response to their October 7th subpoena (with an October 29th response date).

30.     So, that same day (*i.e.*, October 24, 2019), counsel for the Ecometal Defendants requested that Terves's counsel advise: "(1) whether any [third-party] subpoenas have been served; and (2) if so, whether any documents have been produced by any of the subpoenaed parties." A true and correct copy of the Ecometal Defendants' letter of October 24, 2019 is attached to this Complaint as Exhibit E.

31.     On October 25, 2019, Terves's counsel responded that third-party documents had been produced and attached the "only documents that [Terves's counsel had] received back in

7

response to the subpoenas." A true and correct copy of McDonald Hopkins letter of October 25, 2019 (without enclosure) is attached to this Complaint as Exhibit F.

32.     Those documents produced to Terves's counsel by Bradley Machine were (1) a cover letter stating that, "To the best of my knowledge Bradley Machine & Design, LLC does not have in its possession any material, formulas, documents, or records concerning any Dissolvable Casting from Ecometal Inc., Nick Yuan, or Yueyang Aerospace New Materials Co., Ltd."; and (2) a Settlement Agreement and Mutual Release executed between Magnesium Machine, its principals Mr. Loren Swor and Mr. Brian Wilkinson, Bradley Machine & Design LLC, and Mr. McCrackin ("Settlement Agreement"). A true and correct copy of the Settlement Agreement produced by Bradley Machine to Terves's counsel is attached to this Complaint as Exhibit G.

33.     The Settlement Agreement produced by Bradley Machine contains the following provisions regarding confidentiality:

> 3.1     Confidentiality/Exceptions. The Parties will keep confidential the specific terms, conditions, provisions, and negotiation of this Agreement, except that the terms, conditions, provisions, and negotiation of this Agreement may be disclosed or characterized as follows:
>
> > 3.1.1    By any Party to current or future directors, members, officers and employees (as necessary to ensure compliance with this Agreement);
> >
> > 3.1.2    By any Party when needed to respond to any valid order of any court or administrative or regulatory agency of competent jurisdiction with the statutory power to compel such disclosure, or in response to a valid subpoena or discovery request;
> >
> > 3.1.3    By any Party in confidence to its attorney(s), insurers, accountants, spouse, financial advisors, or auditors;
> >
> > 3.1.4    By any Party to enforce the terms of this Agreement; or
> >
> > 3.1.5    By written agreement of the parties.

3.2    Disclosure. In the case of a disclosure under Section 3.1.2, at least twenty (20) days prior to making such disclosure when possible or reasonable under the circumstances, where legally permissible, the Party shall notify the other Party and shall deliver a copy of such subpoena discovery request, and/or order to the other Party(ies) to afford it the opportunity to seek a protective order or other appropriate remedy against disclosure. If asked about the Lawsuit or the dismissal thereof, the Parties shall respond that the Lawsuit was mutually resolved.

34.    The Settlement Agreement also contains the following provision which identifies the MM Trade Secret Products and Methods, as follows:

1.6    Disclaimer of Interests. . . . Further the BMD Parties hereby disclaim any and interests and rights in and to the MMP Parties' designs and other intellectual property, including, but not limited to, [MM TRADE SECRET PRODUCTS AND METHODS] and agrees not to directly or indirectly manufacture, produce, market and/or sell dissolving magnesium balls or slips for a period of three (3) years from the Effective Date. . . .

35.    In violation of the Settlement Agreement, Magnesium Machine was not notified by Bradley Machine of its intention to produce the Settlement Agreement in response to Terves's subpoena, nor was Magnesium Machine otherwise provided any opportunity to seek a protective order prior to Bradley Machine's production of the Settlement Agreement to Terves's counsel.

36.    On October 25, 2019, when the Ecometal Defendants, Magnesium Machine, and their respective counsel first learned that Bradley Machine had produced the Settlement Agreement to Terves's counsel, they had no reason to believe that the produced documents would be forwarded to Terves.

37.    This Court's Local Patent Rules, which Terves's counsel had already explicitly invoked when serving early discovery, at L.P.R. 2.2, entitled "Confidentiality," states: "Pending entry of a protective order, discovery and disclosures deemed confidential by a party shall be produced to the adverse party for the eyes of counsel of record only, marked 'Attorney's Eyes

Only — Subject to Protective Order.' The discovery and disclosures so marked shall be used solely for purposes of the pending case and shall not be disclosed to the client or any other person."

38.     Third-party Bradley Machine was not made aware of this rule in the subpoena served on it by Terves's counsel. A true and correct copy of the subpoena served by Terves's counsel on Bradley Machine was attached as part of Exhibit B.

39.     Third-party Bradley Machine did not mark the produced version of the Settlement Agreement "Attorney's Eyes Only — Subject to Protective Order." However, the "Confidentiality" section of the produced Settlement Agreement explicitly states that the parties considered the agreement, its specific terms, conditions, and provisions to be confidential.

40.     On November 4, 2019, counsel for the Ecometal Defendants learned that Terves's counsel had served a subpoena on Magnesium Machine, via its registered agent, Mr. Dan Carsey, on October 1, 2019. Unfortunately, Terves's counsel had caused this subpoena to be served without providing prior notice to counsel for the Ecometal Defendants, in contravention of Fed. R. Civ. P. 45(a)(4).

41.     On November 4, 2019, Mr. Carsey sent counsel for Terves and for the Ecometal Defendants (by carbon copy) a letter making sure that Terves was aware that "Bradley failed to notify Magnesium Machine [of Bradley's need to disclose confidential information in response to a valid subpoena from any Party] and thus is in breach of the Agreement. Obviously, this is concerning to Magnesium Machine as confidential information has been disclosed without any appropriate remedy." A true and correct copy of Mr. Carsey's November 4, 2019 letter is attached to this Complaint as Exhibit H.

42.     Mr. Carsey further advised: "Magnesium Machine considers the subpoena submitted in your letter dated October 31, 2019 as improper due to Bradley's breach of the

Agreement by the inappropriate disclosure of confidential information and lack of notification of the subpoena that you submitted to Bradley."

43.    Also on November 4, 2019, counsel for the Ecometal Defendants objected to Terves's service of the subpoena on Magnesium Machine's without providing the prior notice required by the Federal Rules of Civil Procedure. A true and correct copy of the Ecometal Defendant's November 4, 2019 letter is attached to this Complaint as Exhibit I.

44.    Terves' counsel acknowledged that it should have provided notice.

45.    On November 6, 2019, Terves's counsel responded to Mr. Carsey's November 4th correspondence, stating:

> 1. Whether Bradley breached a confidentiality obligation to Magnesium Machine ("MMP") when it responded to the Bradley subpoena has no effect on the validity of the subpoena issued to MMP. The MMP subpoena stands on its own, your theory is not supported by law, and your objection to the subpoena on that basis, therefore, is not well taken.

> 2. Moreover, **under the N.D. of Ohio's Local Patent Rule 2.2**: "Discovery cannot be withheld on the basis of confidentiality absent Court order." Therefore, the confidentiality clause that you cite would not have been a proper basis for Bradley to withhold the agreement, and it's not a proper basis for MMP to withhold it or to try and claw it back.

> 3. *Because there is not yet a stipulated protective order in the case, L.P.R. 2.2 allows us to designate the agreement as "Attorney's Eyes Only – Subject to Protective Order" until an order is entered. Please let me know if you want us to designate it as such.*

> 4. The confidentiality clause on which you rely allows MMP twenty days "to seek a protective order or other appropriate remedy against disclosure." *While I disagree with your objection, to cure the issue that you raise, I will quarantine the agreement and hold it secure as an officer of the court for twenty days,* i.e., until November 26, 2019. *That gives you twenty days to seek a protective order or other appropriate remedy against disclosure from the Court.* If you seek a judicial remedy within that time period, I will comply with the Court's order regarding the agreement. If you do not seek judicial remedy, then I will end the quarantine and treat the document as subject to whatever confidentiality designation is placed on it in accordance with L.P.R. 2.2.

5. I expect MMP to comply with the subpoena issued to it.

(Emphasis added.) A true and correct copy of McDonald Hopkins November 6, 2019, letter is attached to this Complaint as Exhibit J.

46.     That same day, Mr. Carsey responded that "I agree it is best to designate the Agreement per your paragraph 3 below until further court order and request that you do so at this time." A true and correct copy of Mr. Carsey's November 6, 2019 communication is attached to this Complaint as Exhibit K.

47.     Following that correspondence with Mr. Carsey, Terves's counsel communicated to the Ecometal Defendants' counsel that—

> [T]he agreement produced by Bradley in response to the subpoena has now been designated AEO under LPR 2.2. Please treat it accordingly.
>
> Also, as I told Mr. Carsey, I have quarantined my copy of the agreement as an officer of the Court and am holding it secure until there is a resolution of how it will be handled. Because you also have a copy of Bradley's subpoena response, please advise whether you also will quarantine the agreement, delete it, or come to some different arrangement with Mr. Carsey.

A true and correct copy of McDonald Hopkins November 7, 2019 letter is attached to this Complaint as Exhibit L.

48.     Counsel for the Ecometal Defendants agreed to quarantine its copy of the Settlement Agreement pending resolution of the issue.

49.     In a subsequent communication to Mr. Carsey on November 7, 2019, Terves's counsel confirmed that he had "designated the document as AEO under the Local Patent Rules, which is the equivalent of a protective order, and the document is securely quarantined and protected." A true and correct copy of McDonald Hopkins November 7, 2019 letter is attached to this Complaint as Exhibit M.

     **(iii)**    **The Ecometal Defendants and Magnesium Machine learn that Terves's counsel disclosed the Attorneys' Eyes Only Settlement Agreement to Terves's President, Andrew Sherman.**

50.    During a meet-and-confer (held on a recorded conference line) on November 8, 2019 regarding Bradley's production of the Settlement Agreement and the subpoena served on Magnesium Machine, Terves's counsel indicated—notwithstanding McDonald Hopkins' previous representation that it had securely quarantined and protected the highly confidential, trade secret document—that it had actually previously provided a copy of the very same Settlement Agreement to one person at Terves. However, McDonald Hopkins *did not believe that his client had further distributed the document*. McDonald Hopkins further advised that, upon receipt of Mr. Carsey's November 4th letter, it immediately instructed Terves to return the Settlement Agreement and destroy any copies.

51.    Mr. Carsey had requested written confirmation regarding to whom the Settlement Agreement had been distributed and that it had been clawed back, quarantined, and all copies distributed to Terves had been destroyed.

52.    Immediately following the call, Terves's counsel wrote to confirm that he "will check with my client to further confirm that the MMP/Bradley agreement was not shared with anyone (or if it was, that all copies have been clawed back and destroyed). I will further confirm this by signed letter or affidavit." A true and correct copy of McDonald Hopkins November 8, 2019 communication is attached to this Complaint as Exhibit N.

53.    In response, Magnesium Machine's counsel added one request: "Just one addition. If the agreement was shown or shared with anyone or any entity, we would like the names." A true and correct copy of Hall Estill's November 11, 2019 communication is attached to this Complaint as Exhibit O.

54. On November 20, 2019, nearly two weeks after the meet-and-confer, Terves's counsel finally sent Mr. Carsey the requested confirmation:

> I write to follow up to our November 8, 2019 phone call. As I explained during the phone call, Mr. McCrackin emailed to me a copy of the MMP/Bradley settlement agreement on October 15, 2019, in response to the subpoena. That same day, I forwarded the email to the President of Terves, Andy Sherman. In response to your November 4, 2019, letter, I instructed Mr. Sherman to destroy and delete all copies of the settlement. He confirmed to me that he did so. I have not shared the settlement with anyone except for lawyers at my law firm that are representing Terves and Evan Talley (counsel for defendants in the lawsuit), and I have designated the settlement as ATTORNEYS EYES ONLY under the Court's Local Patent Rules.
>
> *After our November 8 call, I asked Mr. Sherman again to confirm that he deleted all copies of the settlement and asked whether he had forwarded the settlement to anyone. Mr. Sherman confirmed to me that he:* (a) deleted all copies, (b) *shared the settlement with only one Terves employee,* and (c) did not share the settlement with anyone else or anyone outside of Terves. The Terves employee with whom Mr. Sherman shared the settlement has confirmed to me that he deleted the settlement that Mr. Sherman sent to him by email, has no copies, and did not share it with anyone. In sum, there has been a total quarantine. The only copies that remain are held by me and Mr. Talley, and we are bound to treat them as "Attorneys' Eyes Only" under the Court's Local Patent Rules.

A true and correct copy of McDonald Hopkins November 20, 2019 letter is attached to this Complaint as Exhibit P.

55. Despite the specific request from Magnesium Machine's counsel to identify by name any other person or entity with whom the Settlement Agreement had been shown or shared, McDonald Hopkins' November 20th letter intentionally avoids answering the very direct question.

56. On information and belief, Magnesium Machine suspects the unnamed Terves employee to whom Mr. Sherman disclosed the Settlement Agreement is Mr. Steven Barela, a former consultant of Magnesium Machine.

57. On November 21, 2019, during the initial status conference in the Related Litigation, Terves's Counsel disclosed that Terves's President, Andy Sherman, a metallurgist, has a B.S. in Ceramic and Chemical Engineering and an M.S. in Ceramic Engineering from The Ohio State University.

58.     Unfortunately, the nature of certain of the MM Trade Secret Products and Methods is such that someone skilled in the art would easily retain the secrets in their mind once they are exposed to them. This is particularly problematic where the person(s) exposed are in the management of a company in the industry to which the trade secrets directly pertain.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016
### (18 U.S.C. § 1836)

59.     Magnesium Machine repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.     This claim is brought against all Defendants.

61.     On its face, the twelve-page Settlement Agreement states that it is confidential, requires that Bradley Machine provide notice to Magnesium Machine upon receiving a subpoena, and that Magnesium Machine would have had twenty days to protect any confidential information from disclosure. Thus, Defendant McDonald Hopkins knew or should have known that Bradley Machine could not have complied with the twenty-day notice provision because it received the Settlement Agreement on October 15, 2019, in response to a subpoena served no more than 8 days earlier.

62.     In the hands of lawyers, this inappropriate disclosure of the MM Trade Secret Products and Methods in violation of the Settlement Agreement would have been terribly unfortunate, but the damage would have been much easier to contain.

63.     Unfortunately, notwithstanding the clear statement in this thirteen-page Settlement Agreement that it was confidential and contained confidential information and the requirement in the Local Patent Rules to treat all confidential documents as Attorney's Eyes Only Confidential

until an appropriate protective order is entered, McDonald Hopkins sent a copy of the confidential Settlement Agreement to Terves's president, whom McDonald Hopkins knows to be a person of extraordinary skill in the relevant art.

64.     In fact, notwithstanding Magnesium Machine's urgent attempts to try to minimize the damage from Bradley Machine's breach-laden disclosure of the trade secrets, McDonald Hopkins deceived Magnesium Machine's counsel about the status of the document and its purported quarantine over the document. On November 6th, McDonald Hopkins told Magnesium Machine's counsel to "cure [the confidentiality] issue you raise, I will quarantine the agreement and hold it secure as an officer of the court for twenty days, i.e., until November 26, 2019." (Exhibit J). Again, on November 7th McDonald Hopkins stated that the document containing the trade secrets had been "securely quarantined and protected." (Exhibit M).

65.     However, Magnesium Machine would learn nearly three weeks later that not only had the Settlement Agreement *not initially "held securely by an officer of the court,"* it was not only in the possession of a Terves employee from October 15 to at least November 4th, but it was also in the possession of a second Terves employee from until at least November 8th, and, if these two deceptions were not bad enough, the first Terves employee is Terves's president, whom McDonald Hopkins described to the Court in the Related Litigation as being highly skilled in magnesium technology, *i.e.* the last type of individual Magnesium Machine would want to have access to its MM Trade Secret Products and Methods for any amount of time, let alone three weeks.

66.     As a result of the foregoing willful wanton disregard of the confidentiality nature of the improperly produced document and blatant lies to cover up the misappropriation, Defendants have gained access to MM Trade Secret Products and Methods, which are used in interstate commerce, by improper means.

67.    The MM Trade Secret Products and Methods disclosed in the Settlement Agreement were—and continue to be—protected by reasonable measures.

68.    The MM Trade Secret Products and Methods have an actual independent economic value from not being known or being readily ascertainable through proper means by any person who could obtain economic value from the disclosure or use of the information.

69.    Defendants knew or had reason to know that they were accessing, transferring and/or possessing the Settlement Agreement, which discloses the MM Trade Secret Products and Methods, without express or implied consent at the time of use or disclosure.

70.    Defendants knew or had reason to know that the Settlement Agreement, which discloses the MM Trade Secret Products and Methods, was derived from or through a person who had used improper means to acquire and/or transfer the trade secret, including breach of contract, failure to respect the facially confidential nature of the Settlement Agreement, violating the confidentiality obligations of this Court's Local Patent Rules, and evading direct questions regarding the extent of the dissemination to cover up the extent of the misappropriation.

71.    Defendants' misappropriation was willful and malicious.

72.    Defendants' misappropriation of this information has directly and proximately caused an injury to Plaintiffs and has resulted in actual and consequential damages, including but not limited to the cost of this action to try to limit the further disclosure of the MM Trade Secret Products and Methods..

73.    Magnesium Machine's remedy at law will be seriously inadequate to fully remedy the injuries caused by the wrongful actions of Defendants.

74.    As a result of Defendants' misappropriation, disclosure, and possession of the MM Trade Secret Products and Methods, Magnesium Machine has suffered, and will continue to suffer,

damages in an indefinite amount, that will be difficult to ascertain with any certainty given the nature of the secrets and the nature of Magnesium Machine's previously anticipated first movers' advantage that is now highly at risk prompting Magnesium Machine to frantically contemplate altering its prior business plans for the trade secrets.

## COUNT II

### VIOLATION OF OHIO UNIFORM TRADE SECRETS ACT
### (R.C. § 1333.61 *et seq.*)

75. Magnesium Machine repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76. This claim is brought against all Defendants.

77. On its face, the twelve-page Settlement Agreement states that it is confidential, requires that Bradley Machine provide notice to Magnesium Machine upon receiving a subpoena, and that Magnesium Machine would have had twenty days to protect any confidential information from disclosure. Thus, Defendant McDonald Hopkins knew or should have known that Bradley Machine could not have complied with the twenty-day notice provision because it received the Settlement Agreement on October 15, 2019, in response to a subpoena served no more than 8 days earlier.

78. In the hands of lawyers, this inappropriate disclosure of the MM Trade Secret Products and Methods in violation of the Settlement Agreement would have been terribly unfortunate, but the damage would have been much easier to contain.

79. Unfortunately, notwithstanding the clear statement in this thirteen-page Settlement Agreement that it was confidential and contained confidential information and the requirement in the Local Patent Rules to treat all confidential documents as Attorney's Eyes Only Confidential until an appropriate protective order is entered, McDonald Hopkins sent a copy of the confidential

Settlement Agreement to Terves's president, whom McDonald Hopkins knows to be a person of extraordinary skill in the relevant art.

80. In fact, notwithstanding Magnesium Machine's urgent attempts to try to minimize the damage from Bradley Machine's breach-laden disclosure of the trade secrets, McDonald Hopkins deceived Magnesium Machine's counsel about the status of the document and its purported quarantine over the document. On November 6th, McDonald Hopkins told Magnesium Machine's counsel to "cure [the confidentiality] issue you raise, I will quarantine the agreement and hold it secure as an officer of the court for twenty days, i.e., until November 26, 2019." (Exhibit J). Again, on November 7th McDonald Hopkins stated that the document containing the trade secrets had been "securely quarantined and protected." (Exhibit M).

81. However, Magnesium Machine would learn nearly three weeks later that not only had the Settlement Agreement *not initially "held securely by an officer of the court,"* it was not only in the possession of a Terves employee from October 15 to at least November 4th, but it was also in the possession of a second Terves employee from until at least November 8th, and, if these two deceptions were not bad enough, the first Terves employee is Terves's president, whom McDonald Hopkins described to the Court in the Related Litigation as being highly skilled in magnesium technology, *i.e.* the last type of individual Magnesium Machine would want to have access to its MM Trade Secret Products and Methods for any amount of time, let alone three weeks.

82. Whether or not Defendant Terves has already disclosed or otherwise used the MM Trade Secret Products and Methods is of no moment. Given the nature of the trade secrets and the nature of Terves business such use and disclosure are inevitable.

83. As a result of the foregoing willful wanton disregard of the confidentiality nature of the improperly produced document and blatant lies to cover up the misappropriation,

19

Defendants have gained access to MM Trade Secret Products and Methods, which are used in interstate commerce, by improper means.

84.     The MM Trade Secret Products and Methods disclosed in the Settlement Agreement were—and continue to be—protected by reasonable measures.

85.     The MM Trade Secret Products and Methods have an actual independent economic value from not being known or being readily ascertainable through proper means by any person who could obtain economic value from the disclosure or use of the information.

86.     Defendants knew or had reason to know that they were accessing, transferring and/or possessing the Settlement Agreement, which discloses the MM Trade Secret Products and Methods, without express or implied consent at the time of use or disclosure.

87.     Defendants knew or had reason to know that the Settlement Agreement, which discloses the MM Trade Secret Products and Methods, was derived from or through a person who had used improper means to acquire and/or transfer the trade secret, including breach of contract, failure to respect the facially confidential nature of the Settlement Agreement, violating the confidentiality obligations of this Court's Local Patent Rules, and evading direct questions regarding the extent of the dissemination to cover up the extent of the misappropriation.

88.     Defendants' misappropriation was willful and malicious.

89.     Defendants' misappropriation of this information has directly and proximately caused an injury to Plaintiffs and has resulted in actual and consequential damages, including but not limited to the cost of this action to try to limit the further disclosure of the MM Trade Secret Products and Methods.

90.     Magnesium Machine's remedy at law will be seriously inadequate to fully remedy the injuries caused by the wrongful actions of Defendants.

20

91.     As a result of Defendants' misappropriation, disclosure, and possession of the MM Trade Secret Products and Methods, Magnesium Machine has suffered, and will continue to suffer, damages in an indefinite amount, that will be difficult to ascertain with any certainty given the nature of the secrets and the nature of Magnesium Machine's previously anticipated first movers' advantage that is now highly at risk prompting Magnesium Machine to frantically contemplate altering its prior business plans for the trade secrets.

## COUNT III

### VIOLATION OF OKLAHOMA UNIFORM TRADE SECRETS ACT
### (Okla. Stat. tit. 78, § 85 *et seq.*)

92.     Magnesium Machine repeats and realleges paragraphs 1 through 91 above as if fully set forth herein.

93.     This claim is brought against all Defendants.

94.     Magnesium Machine brings this claim because it is a resident of Oklahoma and was injured in Oklahoma.

95.     On its face, the twelve-page Settlement Agreement states that it is confidential, requires that Bradley Machine provide notice to Magnesium Machine upon receiving a subpoena, and that Magnesium Machine would have had twenty days to protect any confidential information from disclosure. Thus, Defendant McDonald Hopkins knew or should have known that Bradley Machine could not have complied with the twenty-day notice provision because it received the Settlement Agreement on October 15, 2019, in response to a subpoena served no more than 8 days earlier.

96.     In the hands of lawyers, this inappropriate disclosure of the MM Trade Secret Products and Methods in violation of the Settlement Agreement would have been terribly unfortunate, but the damage would have been much easier to contain.

97.     Unfortunately, notwithstanding the clear statement in this thirteen-page Settlement Agreement that it was confidential and contained confidential information and the requirement in the Local Patent Rules to treat all confidential documents as Attorney's Eyes Only Confidential until an appropriate protective order is entered, McDonald Hopkins sent a copy of the confidential Settlement Agreement to Terves's president, whom McDonald Hopkins knows to be a person of extraordinary skill in the relevant art.

98.     In fact, notwithstanding Magnesium Machine's urgent attempts to try to minimize the damage from Bradley Machine's breach-laden disclosure of the trade secrets, McDonald Hopkins deceived Magnesium Machine's counsel about the status of the document and its purported quarantine over the document. On November 6th, McDonald Hopkins told Magnesium Machine's counsel to "cure [the confidentiality] issue you raise, I will quarantine the agreement and hold it secure as an officer of the court for twenty days, i.e., until November 26, 2019." (Exhibit J). Again, on November 7th McDonald Hopkins stated that the document containing the trade secrets had been "securely quarantined and protected." (Exhibit M).

99.     However, Magnesium Machine would learn nearly three weeks later that not only had the Settlement Agreement *not initially "held securely by an officer of the court,"* it was not only in the possession of a Terves employee from October 15 to at least November 4th, but it was also in the possession of a second Terves employee from until at least November 8th, and, if these two deceptions were not bad enough, the first Terves employee is Terves's president, whom McDonald Hopkins described to the Court in the Related Litigation as being highly skilled in magnesium technology, *i.e.* the last type of individual Magnesium Machine would want to have access to its MM Trade Secret Products and Methods for any amount of time, let alone three weeks.

22

100.    Whether or not Defendant Terves has already disclosed or otherwise used the MM Trade Secret Products and Methods is of no moment. Given the nature of the trade secrets and the nature of Terves business such use and disclosure are inevitable.

101.    As a result of the foregoing willful wanton disregard of the confidentiality nature of the improperly produced document and blatant lies to cover up the misappropriation, Defendants have gained access to MM Trade Secret Products and Methods, which are used in interstate commerce, by improper means.

102.    The MM Trade Secret Products and Methods disclosed in the Settlement Agreement were—and continue to be—protected by reasonable measures.

103.    The MM Trade Secret Products and Methods have an actual independent economic value from not being known or being readily ascertainable through proper means by any person who could obtain economic value from the disclosure or use of the information.

104.    Defendants knew or had reason to know that they were accessing, transferring and/or possessing the Settlement Agreement, which discloses the MM Trade Secret Products and Methods, without express or implied consent at the time of use or disclosure.

105.    Defendants knew or had reason to know that the Settlement Agreement, which discloses the MM Trade Secret Products and Methods, was derived from or through a person who had used improper means to acquire and/or transfer the trade secret, including breach of contract, failure to respect the facially confidential nature of the Settlement Agreement, violating the confidentiality obligations of this Court's Local Patent Rules, and evading direct questions regarding the extent of the dissemination to cover up the extent of the misappropriation.

106.    Defendants' misappropriation was willful and malicious.

107.    Defendants' misappropriation of this information has directly and proximately caused an injury to Plaintiffs and has resulted in actual and consequential damages, including but not limited to the cost of this action to try to limit the further disclosure of the MM Trade Secret Products and Method.

108.    Magnesium Machine's remedy at law will be seriously inadequate to fully remedy the injuries caused by the wrongful actions of Defendants.

109.    As a result of Defendants' misappropriation, disclosure, and possession of the MM Trade Secret Products and Methods, Magnesium Machine has suffered, and will continue to suffer, damages in an indefinite amount, that will be difficult to ascertain with any certainty given the nature of the secrets and the nature of Magnesium Machine's previously anticipated first movers' advantage that is now highly at risk prompting Magnesium Machine to frantically contemplate altering its prior business plans for the trade secrets.

## REQUEST FOR *EX PARTE* SEIZURE

Magnesium Machine hereby incorporates its forthcoming Motion for *Ex Parte* Seizure, which further addresses the basis for that requested relief. In sum, Magnesium Machine requests entry of an order that directs the United States Marshals, pursuant to 18 U.S.C. § 1836(b)(2)(E), to seize the misappropriated Settlement Agreement, which discloses the MM Trade Secret Products and Methods, and ascertain the extent of its dissemination.

## PRAYER FOR RELIEF

**WHEREFORE**, Magnesium Machine pray for judgment against Defendants and request that this Court:

1.    Issue an *ex parte* seizure order authoring seizure of Defendant Terves's devices containing copies of the Settlement Agreement, which discloses the MM Trade Secret Products

and Methods as described in Magnesium Machine's contemporaneously filed Motion for *Ex Parte* Seizure;

2.      Issue an order enjoining Defendants and anyone acting in concert with Defendants from accessing, using, disseminating, or otherwise misappropriating Settlement Agreement, which discloses the MM Trade Secret Products and Methods

3.      Issue an order requiring Defendants and those acting in concert with Defendants:

   a.   To return the Settlement Agreement; and destroy all remaining copies of the Settlement Agreement;

   b.   To identify all persons to whom the Settlement Agreement has been disclosed; and

   c.   To refrain from using the MM Trade Secret Products and Methods;

4.      Order that Magnesium Machine is entitled to its actual, compensatory, and consequential damages relating to Defendants' misappropriation and improper possession of the Settlement Agreement, which discloses the MM Trade Secret Products and Methods;

5.      Order that Magnesium Machine is entitled to its costs and expenses, including its reasonable attorneys' fees, for its efforts to recover the Settlement Agreement, which discloses the MM Trade Secret Products and Methods;

6.      Order that Magnesium Machine recover all taxable costs of this action, including reasonable attorneys' fees and both pre- and post-judgment interest.

7.      Order that Magnesium Machine be awarded punitive damages in view of Defendants' willful, malicious, wanton and deliberate illegal acts committed with oppression, fraud, or malice.

8.    Award Magnesium Machine such other and further relief as this Court deems just

and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a jury trial in this action of all

issues so triable.

Dated: December 4, 2019.                    Respectfully submitted,

/s/ *Steven J. Forbes*
Steven J. Forbes (OH 0042410)
**NORCHI FORBES LLC**
Commerce Park IV
23240 Chagrin Blvd., Ste. 210
Cleveland, OH 44122
Telephone:    (216) 514-9500
E-mail: sforbes@norchilaw.com

-and-

/s/ *Evan W. Talley*
Evan W. Talley, OK Bar # 22923
(*pro hac vice* forthcoming)
**DUNLAP CODDING PC**
609 W. Sheridan Avenue
Oklahoma City, OK  73102
Telephone:    (405) 607-8600
E-mail: etalley@dunlapcodding.com

-and-

/s/ *Jordan A. Sigale*
Jordan A. Sigale
(*pro hac vice* forthcoming)
Illinois ARDC No. 6210047
**DUNLAP CODDING PC**
225 West Washington St., Ste. 2200
Chicago, IL 60606
Telephone: (312) 651-6744
E-mail: jsigale@dunlapcodding.com

*ATTORNEYS FOR PLAINTIFFS*

26

## **VERIFICATION**

State of ___Oklahoma___ )

County of ___Stephens___ ) : ss.

     Loren Swor, being duly sworn, under penalty of perjury, deposes and says:

     1.    I am over eighteen (18) years of age and mentally competent to testify in this matter, and from firsthand knowledge state:

     2.    I am the managing member of Magnesium Machine, LLC, the plaintiff in the foregoing action.

     3.    I have read the foregoing Verified Complaint, and can state that its factual contents are true and based upon my personal knowledge, except as to all matters alleged upon information and belief, which matters I believe to be true based on my review of pertinent documents and conversations with persons with knowledge.

_____
                             Loren Swor

Sworn before me this

3rd ___ day of ___December___, 2019

_____
          Notary Public

BRAD RAMSEY
NOTARY
# 10006833
EXP. 08/11/22
PUBLIC
STATE OF OKLAHOMA