UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Magnesium Machine, LLC et al., | ) | Case No. 1:19-cv-2818 |
| | ) | |
| Plaintiffs, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | |
| | ) | **PUBLIC VERSION** |
| Terves, LLC et al., | ) | |
| | ) | **UNREDACTED VERSION |
| Defendants. | ) | TO BE FILED UNDER SEAL** |

**Terves, LLC's Reply Brief in Support of
Motion to Dismiss Complaint Under Rule 12(b)(6)**

## I.   Introduction

The opposition brief of plaintiffs Magnesium Machine, LLC et al. (collectively, "MMP") (ECF #47) does not cite a single case that allowed a trade secret lawsuit to proceed against a party and its attorney for receiving an alleged trade secret in open discovery, let alone where the alleged trade secret was produced in response to a lawful subpoena without restriction and the document was placed under Protective Order when the owner of the alleged trade secret objected to the recipient.

The *Stork-Werkspoor* case cited by Terves is the closest case that any party found.[1] In that case, the Louisiana Court of Appeals reversed the trial court and ruled, as a matter of law, that the Louisiana Trade Secret Act (which is based on the same Uniform Trade Secret

---

[1] MMP cites a Utah federal case, *Sorensen v. Polukoff,* to argue the litigation privilege should not apply to trade secret claims. (MMP's Opposition Brief ("Opp.") 17, ECF #47, 50.) There, however, the court declined to apply the privilege because "Plaintiff has alleged conduct that is unrelated to judicial proceedings and, thus, would not be protected by the privilege." No. 2:18-CV-67 TS-PMW, 2020 WL 1692815, at *3 (D. Utah Apr. 7, 2020). The alleged trade secrets in *Sorensen* were obtained by defendant outside of court prior to the lawsuit's filing, they were <u>not</u> obtained by subpoena or discovery request, and thus the case does not support MMP's lawsuit. *Id.*

{8937642: }

Act as the statutes on which MMP sues) "was never intended to apply to discovery in civil actions." *Stork-Werkspoor Diesel V.V. v. Koek*, 534 So.2d 983, 985 (La. Ct. App. 1988). That court ruled that alleged trade secrets must be discoverable in litigation and an owner's "remedy is to seek protective orders from the court." *Id*. at 985. To allow a trade secret act to apply to evidence exchanged in discovery "would have the effect of rendering all discovery devices totally ineffective … where crucial information was cloaked in the mantle of 'trade secrets,'" which would "be absurd and lead to manifest injustice." *Id.*

In *Stork-Werkspoor*, a party obtained alleged trade secrets from an individual behind closed doors. Here, the reasons for dismissal are greater than in *Stork-Werkspoor* because the alleged trade secret was provided in a single document that was produced in response to a lawful subpoena, and Terves is now bound by Protective Order not to access or use the document or the tiny bit of it that MMP alleges is trade secret.

The facts alleged in MMP's complaint do not justify a costly federal lawsuit, and allowing the case to proceed would create precedent allowing parties or non-parties to tactically file expensive federal trade secret lawsuits over documents received in discovery, even when (as here) those documents were produced without objection or restriction. This would, among other things, have an adverse chilling effect on attorney-client communications, zealous advocacy, and the search for truth through discovery.

Terves urges this Court to dismiss.

## II.     MMP does not allege a "misappropriation" by Terves.

MMP's opposition exposes its failure to allege an act of "misappropriation" as the simplest ground for dismissing MMP's complaint against Terves. Because

misappropriation is an essential element of a trade secret claim, MMP's failure to allege a plausible "misappropriation" is alone reason to dismiss.

To allege a misappropriation, MMP must allege a use, disclosure, or acquisition by improper means. *See* Ohio Rev. Code § 133.61(B); 18 U.S.C. § 1839(5); 78 Okl. Stat. § 86(2). MMP does not argue that Terves "used" or "disclosed" the alleged secret. (Opp. 16-17.) MMP argues, instead, that the misappropriation occurred when Terves' Andy Sherman received the settlement from Terves' counsel and anything after that acquisition is a "red herring." (Opp. 16.)[2] Thus, MMP relies entirely on its allegation that Terves *acquired* the settlement by *improper means*. *See* 18 U.S.C. § 1839(5)(A); Ohio Rev. Code § 1333.61(B)(1); 78 Okl. Stat. § 86(2)(a).

According to MMP, "because the materials produced to McDonald Hopkins by Bradley Machine were required by Court Rules to be maintained as confidential Attorneys Eyes Only, Terves obtained those materials by improper means." (Opp. 16.) MMP continues: "McDonald Hopkins was under a duty—pursuant to Local Patent Rule 2.2 for the Northern District of Ohio—to treat all confidential documents obtained as Attorneys Eyes Only Confidential." (Opp. 16.) Because MMP bases the "improper means" allegation on a legally incorrect reading of Local Patent Rule 2.2, the Court should dismiss as a matter of law.

---

[2] In response to Terves' argument that the intra-corporate transmission of the document from Terves' Andrew Sherman to Terves' Steven Barela is not a "disclosure" under any trade secret act, MMP does not disagree and, instead, says the argument is a "red herring" because the "misappropriation occurred before Mr. Sherman ever passed the Settlement Agreement to [Barela]." (Opp. 16.)

Local Patent Rule 2.2 only prohibits an attorney from disclosing materials to his client if the materials are "marked 'Attorney's Eyes Only – Subject to Protective Order.'" The rule states, in relevant part:

> Pending entry of a protective order, discovery and disclosures deemed confidential by a party shall be produced to the adverse party for the eyes of outside counsel of record only, marked "Attorney's Eyes Only – Subject to Protective Order." The discovery and disclosures <u>so marked</u> shall be used solely for purposes of the pending case and shall not be disclosed to the client or any other person.

L.P.R. 2.2 (emphasis added). That language is plain and unambiguous: it only applies to documents that are "marked 'Attorney's Eyes Only – Subject to Protective Order.'"

MMP's complaint proves that MMP has not, and cannot, allege a plausible violation of Local Patent Rule 2.2 by McDonald Hopkins, let alone that Terves would have known or should have known of such a violation when it received the settlement from its counsel. *See* 18 U.S.C. § 1839(5)(A) (defining "misappropriation" as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means").

That is because—assuming L.P.R. 2.2 applies to non-parties that respond to subpoenas, despite the rule's language applying to "parties"—MMP's complaint expressly admits that Bradley Machine did <u>not</u> mark its subpoena response "Attorney's Eyes Only – Subject to Protective Order." (Compl. ¶ 39.) MMP alleges: "Third-party Bradley Machine did <u>not</u> mark the produced version of the Settlement Agreement 'Attorney's Eyes Only – Subject to Protective Order.'" (*Id.* (emphasis added).) MMP attached Bradley's subpoena response as Ex. G to its complaint, and the document further corroborates MMP's

allegation that Bradley Machine did *not* mark the settlement AEO under Local Patent Rule 2.2. (*See* Ex. G to Compl.)

Because the restrictions of LPR 2.2 only apply to documents "so marked," MMP does not plausibly allege that McDonald Hopkins violated that rule. Because LPR 2.2 did not apply, McDonald Hopkins violated no duty of confidentiality when it shared the document with its client Terves, and hence there is no allegation that Terves acquired the document by "improper means." Thus, MMP has not alleged improper means and dismissal is appropriate.

Dismissal is further appropriate here to stop MMP's tactical use of this lawsuit to disrupt Terves' patent case against MMP's supplier and business partner: Ecometal. If this case proceeds, MMP will seek work-product and attorney-client communications between McDonald Hopkins and Terves about the settlement and the patent case, likely try to disqualify McDonald Hopkins as counsel for Terves, and depose McDonald Hopkins' attorneys to try to turn Terves and its lawyers against each other. Terves asks that the Court not allow this to happen.

If MMP truly believes that Bradley Machine breached the settlement, then it should sue Bradley Machine for that alleged breach. Neither Terves nor McDonald Hopkins should be held liable for Bradley Machine's alleged breach and, if anything, they are guilty only of cooperating with MMP to try and mitigate the alleged damage caused by Bradley Machine's breach. The fact that MMP sued Terves and McDonald Hopkins, rather than Bradley Machine, confirms its ulterior motive. The Court should dismiss.

**III. The litigation privilege bars all of MMP's claims.**

In response to the litigation privilege defense, MMP argues that the privilege is "not absolute" and should not apply to trade secret misappropriation claims under Ohio, Oklahoma, or federal common law. (Opp. 17.) MMP does not dispute that, if the privilege applies, then the alleged conduct was litigation-related and therefore immune from civil liability. Terves replies below to explain how the litigation privileges bar all three claims.

**A. Ohio's litigation privilege bars the Ohio claim.**

Ohio has followed the national trend of applying the litigation privilege to all causes of action (regardless of form) directed at litigation communications or conduct: "While the privilege historically was raised to defeat defamation claims, the modern version has broadened in most states to include multiple tort claims." *Reister v. Gardner*, 2019-Ohio-4720, --- N.E.3d ----, ¶ 24 (12th Dist.) Quoting the 11th Circuit's *Jackson v. BellSouth* decision, the Ohio Court of Appeals held "[a]bsolute immunity must be afforded to *any act* occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement *or other tortious behavior* … so long as the act has some relation to the proceeding." *Id.* (emphasis added) (quoting *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274 (11th Cir. 2004)).

Because Ohio follows the 11th Circuit's broad view of the litigation privilege, and because MMP sued on an attorney-client communication directly related to the litigation (*i.e.*, an email from McDonald Hopkins to Terves with the settlement as an attachment), the litigation privilege applies to Terves receiving the subpoena response from its trial counsel. Thus, this Court should dismiss MMP's Ohio trade secret claim.

### B. Oklahoma's litigation privilege bars the Oklahoma claim.

As to MMP's questioning whether Oklahoma recognizes a litigation privilege that would apply to trade secret claims (Opp. 18), it does. Per the 10th Circuit: "Oklahoma has afforded participants in judicial proceedings an absolute immunity against later civil suits grounded in litigation conduct." *Knight v. Mooring Capital Fund, LLC*, 749 F.2d 1180, 1185 (10th Cir. 2014) (citing cases). In *Patel*, the Oklahoma Supreme Court affirmed the dismissal of claims for fraud, deceit, and perjury against a party and its trial counsel under the litigation privilege and, in doing so, held that "no civil remedy is available for litigation-related misconduct." *See Patel v. OMH Med. Center, Inc.*, 987 P.2d 1185, 1201-03 (Okl. 1999).

Because MMP seeks a civil remedy for alleged litigation-related misconduct, Oklahoma's litigation privilege bars the claim under Oklahoma law.

### C. The federal litigation privilege bars the DTSA[3] claim.

#### 1. Federal common law recognizes a litigation privilege.

MMP's claim that there is no federal common law litigation privilege is mistaken. (Opp. 19-20.) Federal common law applies a litigation privilege against federal claims based on alleged litigation conduct. This makes sense because the policies underlying the state litigation privileges apply with equal force to federal claims, the Federal Rules of Civil Procedure mirror state procedure rules (which govern litigation misconduct), redundant state and federal claims should be treated consistently, and the right to file

---

[3] "DTSA" is an acronym for the Defend Trade Secrets Act under which MMP has sued.

{8937642: }  7


and prosecute lawsuits are protected by the state and U.S. constitutions. *See Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193, ¶ 22, 133 Ohio St.3d 366.

Indeed, federal courts in the Northern District of Ohio have applied the litigation privilege in federal court regarding federal issues. *See, e.g., Prakash v. Altadis U.S.A. Inc.*, No. 5:10CV0033, 2012 WL 1109918 *10 (N.D. Ohio Mar. 30, 2012) (Pearson, J.) ("Litigation privilege, and its antitrust counterpart, the *Noerr Pennington* doctrine, immunize Defendants from federal or state liability based on their trademark enforcement efforts.").

Ironically, the 7th Circuit's *Steffes* decision cited by MMP supports the application of the litigation privilege under federal common law here against MMP's DTSA claim. *Steffes v. Stepan Co.*, 144 F.3d 1070 (7th Cir. 1998). There, plaintiff Steffes sued her former employer Stepan for disability discrimination under the ADA. *Id.* at 1071. During litigation, a Stepan employee called Steffes then-current employer, Dow Chemical, to ask whether Steffes was employed and told Dow about the lawsuit and Steffes' disability. Stepan lost two weeks of work while Dow investigated her disability, and Stepan filed a second lawsuit against Steffes for retaliation based on the disclosure to Dow. *Id.* at 1075.

The district court dismissed the second lawsuit based on the litigation privilege, and the Seventh Circuit affirmed. *Id.* at 1074, 1077. While the Seventh Circuit declined to apply an "absolute" privilege, it recognized a qualified litigation privilege: "neither is [the privilege] so stingy as to offer no protection to the communication at issue here." *Id.* at 1077. Because the "disclosure arose in the context of the discovery process" (*id.* at 1076), because "Defendants in discrimination suits must have some leeway to investigate possible defenses without undue fear of being subjected to additional liability in

retaliation suites" (*id.* at 1077), and because "litigation tactics subject to supervision by the court cannot constitute independent grounds of liability" (*id.* at 1076), the Court affirmed the dismissal.

Thus, a federal common law litigation privilege does exist and should exist.

### 2. The federal litigation privilege bars the DTSA claims.

To the extent the cases cited by MMP show litigation privileges in federal court are not "absolute," they highlight two factors relevant to whether the privilege should apply.

First, if the privilege frustrates the purpose of the cause of action, the privilege may not apply. So, for example, the litigation privilege may not apply to abuse of process, malicious prosecution, or breach of a contractual promise not to do something, despite the alleged wrongful conduct occurring in litigation. *See, e.g., Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197 (11th Cir. 2018) (insurance company that sued to invalidate insurance policy could be sued for breaching "incontestability" clause in insurance contract by filing lawsuit).

Trade secret misappropriation, however, is not such a cause of action. As *Stork-Werkspoor* stated, the purpose of trade secret laws is to "prevent one person or business from profiting from a trade secret developed by another, because it would thus be acquiring a free competitive advantage." *Stork-Werkspoor*, 534 So.2d at 985. "The act was never intended to apply to discovery in civil actions" (*id.*), and MMP has not cited a single case where a federal or state Trade Secret Act applied to discovery obtained by lawful discovery requests in court. So not allowing trade secret lawsuits over evidence produced in discovery, and used only for litigation purposes, does not frustrate trade secret law.

Moreover, alleging that evidence is "trade secret" does not exempt that evidence from discovery under Rule 26. Instead, such evidence should be protected by protective orders in the case, and not by a separate lawsuit for trade secret misappropriation. *See Armstrong v. Marusic*, 12th Dist. Lake No. 2001-L-232, 2004-Ohio-2594, ¶ 23 ("Much of defendants' argument implies that trade secret information is not normally subject to discovery. This is incorrect. Although confidential, trade secret information is not absolutely privileged."); *Stark-Werkspoor*, 534 So.2d at 986 ("Proof in products liability cases often involve trade secrets" and they are protected by Rule 26(c) and its equivalents); *see also infra* at p. 11, note 4.

Second, courts consider how connected the alleged misconduct is to the litigation and whether it's the type of conduct that the court in the underlying litigation polices. *Steffes*, 144 F.3d at 1076 ("judges are better able to supervise litigation tactics that proceed through the vehicle of the federal discovery rules"). Federal cases cited by MMP show that the privilege may not apply when the conduct is not an intimate part of the litigation. *See, e.g., Nix v. O'Malley*, 160 F.3d 343, 353 (6th Cir. 1998) ("the disclosures … exceed the boundaries of any attorney immunity because the disclosures were tangential to O'Malley's defense"); *Sorensen v. Polukoff*, No. 2:18-CV-67 TS-PMW, 2020 WL 1692815, at *3 (D. Utah Apr. 7, 2020) ("Plaintiff has alleged conduct that is unrelated to judicial proceedings and, thus, would not be protected by the privilege.")

Here, the challenged conduct was intimate to the litigation: issuing a lawful subpoena under Rule 45, receiving an unrestricted response, and sharing it with the client. (*See* Opp. 16.) That act is a direct part of the litigation under Rule 45 and squarely

within the realm of conduct policed by the Court in the underlying litigation. Indeed, alleged trade secrets are almost always relevant and exchanged in discovery of patent cases where R&D, engineering, customer, and financial information is relevant.[4] Here, the handling of a subpoena response is the very type of conduct that occurs under the district court's supervision, under the Federal Rules of Civil Procedure, and under the terms of the Protective Order that now covers the document at issue.

For all of these reasons, even if the Court views the litigation privilege as not "absolute," the Court should apply it here to dismiss all three trade secret claims.

### IV. The Court should dismiss separately for failure to allege a plausible trade secret.

The Court should dismiss the case entirely because either: (a) MMP failed to plausibly allege a "misappropriation," or (b) the litigation privilege applies. So there is no need for the Court to reach the question of whether MMP plausibly alleged the existence of a "trade secret." Nonetheless, the Court should consider the weakness of MMP's trade secret allegations either as a third separate ground for dismissal, or as additional grounds for applying the litigation privilege based on the limited nature of the alleged wrong. *See Steffes*, 144 F.3d at 1077 (affirming dismissal based on the "limited nature" of the wrong that allegedly occurred in the prior litigation).

Arguing that it adequately pleaded the existence of a "trade secret," MMP avoids that the alleged disclosure was only three words buried on page three of the settlement:

---

[4] This Court's standard Protective Order for patent cases specifically identifies "trade secrets" as evidence to be produced under "CONFIDENTIAL" or "ATTORNEYS EYES ONLY" designations. (*See* Protective Order ¶¶ 3-4, available at https://www.ohnd.uscourts.gov/sites/ohnd/files/PatentRules_AppendixA.pdf.)

{8937642: } 11

████████████████ (*See* Terves' Br. in Support of Mot. to Dismiss at 9, ECF #45, 46.) It mostly ignores that two of those three words are wrong by MMP's own admission because, according to MMP, it meant to refer to a patent <u>application</u> for ████████ ████████ (*Id.* at 9-10.)

MMP's arguments that it adequately pleaded that the information in its unpublished patent application is trade secret is irrelevant. (*See* Compl. ¶ 19-20 (alleging trade secret is in unpublished patent application); Opp. 5-6, 10 ("patent application that contains a disclosure of the subject matter of the trade secret at issue")). This is because MMP did not allege, and cannot allege, that Terves or McDonald Hopkins received the patent application itself or its contents. Instead, all that MMP can allege is that Terves received the three words ████████████████ buried in a 12-page settlement. (*See* Ex. G to Compl.)

MMP's opposition does not identify a single allegation in the complaint from which the Court could draw the reasonable inference that Terves knew ████████ ████████ referred to a trade secret, let alone learned what the trade secret was. Indeed, because the term references a "patent," the only reasonable inference that can be drawn is that Terves would <u>not</u> have thought it referred to a trade secret—if it had even noticed those words—because patents are public record.

MMP tries to block this Court from considering those three words as the trade secret because, according to MMP, that fact was disclosed outside the pleading at hearing. (Opp. 9.) MMP is wrong for two separate reasons. First, under Sixth Circuit law, this Court may consider testimony transcripts and court filings from the case or related

cases without converting the motion to one for summary judgment. *See Watermark Senior Living Retirement Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425-26 (6th Cir. 2018). *Watermark* held that public records, court filings, and transcripts can be considered if they "refute a plaintiff's claim." *Id.* It is not necessary that plaintiff reference those documents in its complaint. *Id.* This rule avoids exactly what MMP tries to do here: suppressing undisputed truths that defeat the complaint to try and avoid dismissal and force expensive discovery upon its opponent. Thus, the Court may and should consider MMP's hearing admissions about the alleged trade secret.

Second, the three words ▆▆▆▆▆ are, in fact, part of the pleadings. They were in the settlement attached as Exhibit G to the complaint. (ECF #1-8.) MMP redacted only a clause from one sentence from the publicly-filed version of the settlement: the clause containing those three words. (*Id.*) So MMP's pleading admits those three words are the alleged trade secret allegedly acquired by Terves.

Thus, on the trade secret issue, the legal question for the Court is what, according to the factual allegations in complaint, could the three words ▆▆▆▆▆ plausibly have communicated to Terves and could that information plausibly meet the statutory definitions of trade secret? Those three words, at best, communicate that there is an ▆▆▆▆▆ out there somewhere. Applying the *Twombly/Iqbal*[5] standard, that cannot be a trade secret as a matter of law.

The cases that MMP cites are distinguishable. For example, the *Learning Curve* case involved the plaintiff meeting in-person with defendant under a promise of

---

[5] Deciding Rule 12(b)(6) motion is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

confidentiality, coming up with the idea of a realistic noise-making toy train track to distinguish the product over a competitor's tracks, and then cutting grooves in the track to produce the realistic clickety-clack of the railroad, which defendant then incorporated into its own products. *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 718-19 (7th Cir. 2003) That type of detailed, helpful information and assistance plausibly meets the trade secret definition, whereas an inaccurate three-word reference to a patent application does not.

Other cases cited by MMP involved situations where defendant argued that plaintiff's trade secret descriptions were too broad or general and needed to be more specific. *Productivity-Quality Sys., Inc. v. Cybermetrics Corp.*, No. 3:17-cv-00369, 2018 WL 2009673, at *7-8 (S.D. Ohio Apr. 30, 2018); *Rotex Global, LLC v. CPI Wirecloth & Screens, Inc.*, No. 1:16-cv-244, 2016 WL 776886, at *6 (S.D. Ohio Feb. 29, 2016). That's not the issue here. Rather, plaintiff's complaint is very specific about what it claims the trade secret is: the words ███████████████ Terves' grounds for dismissal, therefore, are different: that the three words cannot plausibly satisfy the statutory definition of trade secret because they do not disclose any plausible trade secret. In the same way, disclosing any other well known two-word compound, such as "sodium chloride patent" or "nitrous oxide patent," would not be enough for a trade secret lawsuit.

The Court should dismiss on the third, separate and independent ground that the complaint fails to allege that ███████████████ plausibly is a trade secret.

{8937642: } 14

## V.     Conclusion

As in *Steffes*, where the "limited nature" of the alleged wrong weighed in favor of dismissal in light of the litigation privilege, here the limited and lawful nature of the alleged act—the mere forwarding of an unrestricted subpoena response by attorney to client as part of the litigation—strongly favors dismissal. Given this, and the fact that the settlement is now protected by Protective Order in the patent case, the Court should dismiss now before it proceeds into costly and invasive discovery and chills how attorneys and parties prosecute patent and other cases involving alleged trade secrets in the future.

Respectfully submitted,

Dated: July 3, 2020

   s/ Matthew J. Cavanagh
David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Terves LLC*

<u>L.R. 7.1(f) Certification</u>

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing memorandum complies with the applicable page limitation of 20 pages.

        <u>s/ Matthew J. Cavanagh</u>
        *Counsel for Terves LLC*

{8937642: }