UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Magnesium Machine, LLC et al., | ) | Case No. 1:19-cv-2818 |
| Plaintiffs, | ) | |
| | ) | Judge Donald C. Nugent |
| vs. | ) | |
| Terves, LLC et al., | ) | |
| Defendants. | ) | |

### **Terves, LLC's Memorandum in Support of Motion for Attorneys' Fees**

Terves does not file this motion lightly, and the undersigned attorney has never sought attorneys' fees against a law firm. But this is no ordinary case as Dunlap Codding, P.C. ("DC") improperly recommended that plaintiffs Magnesium Machine, LLC et al. (collectively, "MMP") sue DC's opposing counsel in the patent case, McDonald Hopkins, for doing nothing more than sharing an unrestricted subpoena response with its client. It is only fair, therefore, that DC and MMP reimburse Terves for the tens of thousands of dollars that their malicious litigation has cost Terves (and continues to cost Terves as MMP now is pushing multiple appeals). Moreover, an example needs to be set so that future litigants are not tempted to harass an adversary and gain a tactical advantage by suing for trade secret theft against lawyers and their clients over documents received in discovery.

By statute, Terves may recover fees from MMP if MMP sued in bad faith, and it may recover fees against DC if that firm multiplied the case unreasonably and vexatiously. Terves meets both legal tests here.

MMP is the classic bad faith litigant. It did not sue to obtain relief. Indeed, MMP had already obtained relief before it sued when Terves deleted the settlement and placed it under Protective Order. If MMP's claim was bona fide, then it would have sued Bradley Machine—the company that MMP says breached the settlement by producing it before giving notice to MMP. Instead, MMP sued to disrupt Terves' patent lawsuit against MMP's supplier of low-cost, infringing Chinese material: Ecometal. MMP knows that, if Terves enjoins Ecometal's importation of infringing material, then MMP's supply of low cost infringing material would cease, and it will lose millions of dollars. Unwilling to lose millions without a fight, MMP used the subpoena response as a pretext to sue Terves, harass it, run up its fees, deplete its energy, distract Terves and its counsel from the patent case, turn Terves against its counsel, use the "trade secret" allegations to block discovery (or dissuade Terves from obtaining more discovery), and make Terves and its attorney less zealously litigate their patent case.

As to fees against DC, that law firm vexatiously multiplied the proceeding by advising MMP to file this baseless lawsuit, despite Terves: (a) deleting the settlement, (b) not using it for purposes other than the litigation, (c) not disclosing it to any third-parties, and (d) agreeing to place it under Protective Order as "Attorneys' Eyes Only." DC further multiplied the proceedings by misstating the merits of the case to the Court ex parte in chambers to have U.S. Marshals sent to Terves' headquarters to seize the personal cell phone and laptop of Terves' President Andrew Sherman.

At every stage of the case, DC chose the vexatious path to multiply the proceedings and maximize the pain for Terves and its counsel. After the ex parte seizure hearing failed

and proved that Terves had done nothing wrong and the settlement was safely under Protective Order, DC doubled-down. Rather than accept responsibility for masterminding a bad lawsuit, DC accused this Court of not issuing detailed enough findings, then appealed claiming this Court abused its discretion (despite the facts and law weighing overwhelmingly against MMP), forced Terves to file an expensive motion to dismiss the complaint, and recently appealed the dismissal order.

Because DC also represents Ecometal in the patent case, it is not hard to connect the dots as to how DC, MMP, and Ecometal benefit from having MMP file this trade secret lawsuit and then multiplying it to Terves' and its counsel's detriment. DC should pay the price for its vexatious litigation tactics. It is unfair to leave Terves—an innocent victim—holding the large legal bill caused by DC weaponizing litigation against Terves, especially when DC has made tens (if not hundreds) of thousands in legal fees representing MMP in this ongoing abuse of process.

Allowing MMP and DC to walk away with a mere dismissal is not enough because they will still have won by achieving their ulterior motive of harassing Terves and its counsel, running up Terves' legal bills, and disrupting the patent case. An award of attorneys' fees would: (a) serve justice by compensating Terves for the fees that it never should have spent, (b) punish MMP for filing a baseless lawsuit and abusing the legal system for its selfish goals, and (c) deter others from doing what MMP and DC did here.

**Statement of Facts**

MMP sued for trade secret misappropriation because Terves' counsel issued a lawful subpoena in the patent case, received a settlement in response that was provided

by Bradley Machine without restriction, and then shared the settlement with his client Terves. (Order, Finding of Fact ¶¶ 2-3, ECF #25.) MMP claimed that three words "--- --- patent"[1] buried on page three of the settlement was a trade secret. ((*Compare* Redacted Portion of § 1.6 of Settlement (Ex. F to Compl.) *with* Un-Redacted Version filed under seal at ECF #34; *see also* Seizure Hearing Transcript ("Tr.")[2] 91:18-94:6 (admitting that "--- --- patent" is the trade secret and other redacted words are not trade secret); *see also* 91:22-92:11 ("Q: So those three words are the trade secret? A: In my world.").)

MMP did not allege, nor could it, that Terves or its counsel disclosed the settlement to third-parties or used the settlement for purposes other than the litigation. (Memo. Opinion and Order ("Opinion."), at 4-5, ECF #58.) Instead, MMP alleged that Terves' counsel sharing the settlement with its Terves client was "improper means" under trade secret law. (*Id.* 6.)

MMP based its "improper means" allegation on its argument that the Court's Local Patent Rule 2.1 forbade Terves' counsel from disclosing the settlement to Terves. (Opinion at 6; *see also* MMP's Opposition Brief ("Opp.") 16, ECF #47, 50.) This argument, as this Court would later rule, failed as a matter of law because: (a) the Local Patent Rule only applies to documents that are marked "Attorneys' Eyes Only" and the complaint admitted that Bradley had not marked the settlement as such, and (b) a violation of a Local Patent Rule does not justify a separate civil action, but instead must be addressed by the District Court in the litigation where the alleged rule violation occurred. (Opinion 6-9.)

---

[1] To avoid filing under seal, and because the Court knows based on prior filings the three words that MMP alleges are trade secret, Terves designates the first two words of the term with dashes.

[2] The hearing transcript was filed under seal at ECF #17.

Before Terves and McDonald Hopkins appeared (and before they even knew this case was filed), MMP obtained a seizure order based on ex parte in camera representations by the DC attorneys. (Opinion 5.) Once the Court heard Terves' and McDonald Hopkins' side, the next day, it dissolved the seizure order. (ECF #15, 25.)

MMP then argued the District Court's dissolution order was insufficient and demanded more detailed findings of fact and conclusions of law. (*See* Minutes of Proceeding, ECF #21.)

On December 20, 2020, this Court entered additional findings and conclusions. (Order, ECF #25.) Those findings and conclusions explained beyond a doubt why MMP's trade secret claims were meritless. With the settlement under Protective Order and its claims now exposed as meritless, MMP should have dismissed at that point.

It didn't. Instead, MMP filed an improper appeal of the dissolution of the seizure order to the U.S. Court of Appeals for the Sixth Circuit. Terves moved to dismiss the appeal because the order was interlocutory and not immediately appealable. The Sixth Circuit stayed MMP's appeal pending a ruling on Terves' motion to dismiss. (*See* Sixth Circuit Appeal No. 20-3397.)

This case proceeded simultaneous with MMP's appeal.

On July 14, 2020 this Court granted Terves' and McDonald Hopkins' motions to dismiss under Rule 12(b)(6) on two independent grounds: (i) failure to allege an act of "misappropriation," and (ii) the litigation privilege. (ECF #58, 59.) On July 15, 2020, Terves notified the Sixth Circuit about the dismissal and advised that it moots MMP's appeal. The Sixth Circuit has not yet acted on the first appeal, and MMP has not dismissed it.

On July 21, 2020, MMP appealed the dismissal order to the Sixth Circuit. (ECF #61, Sixth Circuit Appeal No. 20-3779.)

Terves now moves for attorneys' fees.

## Law and Argument

**I.　Terves has complied with Rule 54 regarding attorney fee motions.**

Under Rule 54, a motion for attorneys' fees must be made within 14 days of judgment. The Court entered final judgment on July 14, 2020, so this motion is timely.

As to the amount of fees sought, Rule 54 requires the movant to "state the amount sought or provide a fair estimate of it." Terves presently estimates the reasonable fees sought to be around $80,000 plus the additional fees that Terves incurs on this motion.

"The court may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C). To conserve resources, Terves asks that the Court first decide whether MMP and DC are liable for fees before the parties submit evidence and arguments about the appropriate fee amount to award.

**II.　The Court should order MMP to pay fees under all three trade secret acts.**

　**A.　All three trade secret laws shift fees
　　　　when plaintiff sues in bad faith and loses.**

The Ohio, Oklahoma, and U.S. Trade Secret Acts all empower the court to "award reasonable attorneys' fees to the prevailing party, if … a claim of misappropriation is made in bad faith." Ohio Rev. Code § 1333.64(A); 78 Okl. Stat. § 89(1); *accord* 18 U.S.C. § 1836(b)(3)(D).

The U.S. Defend Trade Secrets Act (the "DTSA") further states that "bad faith … may be established by circumstantial evidence." 18 U.S.C. § 1836(b)(3)(D).

Courts interpret "bad faith" as requiring "objective speciousness of the plaintiff's claim ... and ... subjective bad faith in bringing or maintaining the claim." *Degussa Admixtures, Inc. v. Burnett*, 277 Fed. Appx. 530, 534 (6th Cir. 2008).

"The judge, as the factfinder in the attorney-fee context, is not required to draw all inferences in favor of the non-moving party but instead is permitted to make factual findings in accordance with his or her own view of the evidence." *Id.* at 536.

The District Court has broad discretion to award attorneys' fees when allowed by statute or under its inherent powers. *Gitler v. Ohio*, 632 F. Supp. 2d 722, 724 (N.D. Ohio 2009) (quoting *Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir. 1986)).

### B. Terves is the prevailing party under all three trade secret acts.

Having won a dismissal, Terves is the "prevailing party" under all three trade secret acts' fee-shifting provisions.

### C. MMP's complaint was objectively specious.

Here, MMP's claim was objectively specious, as the Court confirmed in its order dismissing the case. MMP sued McDonald Hopkins and Terves for exercising their legal right to obtain discovery in the patent case by issuing a lawful subpoena under Rule 45. MMP never made a plausible allegation of a "misappropriation" by Terves or McDonald Hopkins. MMP did not allege, nor could it, that Terves or its counsel: (a) *disclosed* the settlement to third-parties, or (b) *used* the settlement for purposes other than litigation. Instead, MMP based its entire claim on the allegation that Terves' counsel sharing the settlement with its client was "improper means" under trade secret law. MMP based this allegation entirely on its argument that the Court's Local Patent Rule 2.1 forbade Terves'

counsel from disclosing the settlement to Terves' employees. This argument never had a chance because, as a matter of law, the Local Patent Rule's plain and unambiguous language only applies to documents that are marked "Attorneys' Eyes Only," and MMP's complaint admitted that the settlement was not so marked. (*See supra* at p. 4.)

Similarly, MMP's allegation that the three words "--- --- patent" buried on page three of the settlement is a trade secret is objectively specious for several reasons. First, MMP never explained or alleged how Terves would even have know that those three words referred to a trade secret, especially when they refer to a "patent," which is public and the antithesis of a trade secret. Moreover, MMP admitted at hearing that there was never any such thing as "--- --- patent." Instead, MMP says it meant to refer to a "patent application" and the two-word term preceding "patent" that it identified as the alleged trade secret at hearing is different from the term in the settlement agreement. (*See* Terves' Mot. to Dismiss at 9-10 & note 6, ECF #45, 46.) MMP never explained how an incorrect three-word reference to an unpublished patent application would disclose the alleged trade secrets within the patent application—a patent application that Terves never saw or received. At best, "--- --- patent" discloses that there is some *patent* out there for "--- ---": a fact that, according to MMP is untrue, and could not plausibly be trade secret if it were true. (*See id*. at 9-11.)

MMP's claim was also objectively specious because Ohio, Oklahoma, and federal common law all recognize a litigation privilege that bars civil lawsuits over allegations of litigation misconduct, including alleged violations of Protective Orders or Local Patent Rules. (*See* Terves' Reply Br. 6-11, ECF #56.) Such alleged violations must be raised before

the trial or district court before which the misconduct allegedly occurred. This is a basic law that all lawyers should know and should advise their clients accordingly. If MMP and its counsel truly believed that McDonald Hopkins or Terves had violated a Local Patent Rule, then they should have raised it with the District Court presiding over the patent case. That, however, would have led to a summary decision by the Court that there was no such violation.

And neither MMP nor DC wanted a quick resolution. They wanted to make it hurt. By filing a separate lawsuit, MMP was able to send U.S. Marshals to Terves' headquarters, run Terves through a gauntlet of litigation work (when Terves should have been focused on its patent case), and run Terves' legal fees over $80,000 and counting. MMP could not achieve any of those ulterior purposes had it followed the law and merely brought the issue to the District Court by way of a show cause motion or the like.

Thus, MMP's trade secret claim was objectively baseless under the facts and law.

### D. MMP's complaint was subjectively baseless.

MMP also sued with subjective bad faith. Again, because those with bad faith typically don't admit bad faith, it must often be proven with circumstantial evidence. There is an abundance of circumstantial evidence that MMP sued with bad faith intent.

First, MMP misused an ex parte seizure remedy under the DTSA to try to completely shutdown the Terves' business. MMP tried to seize all of Terves' computers, which would have caused the company to grind to a halt, caused Terves to lose orders and customers, and embarrassed Terves. MMP used the ability to have an ex parte conversation to misrepresent the facts of the case to the District Judge in chambers,

where Terves and its counsel had no opportunity to correct the untruths. That led the District Judge to send U.S. Marshals to seize Mr. Sherman's cell phone, laptop, and hard drives. And it forced Terves' counsel to work frantically into the early morning hours to prepare for the next day's hearing, reviewing the pile of documents filed by MMP, studying the law and facts, developing defenses, and preparing arguments and witness examinations. Because a physical seizure of property is so serious, personal, stressful, invasive, disruptive, and uniquely damaging, it presents the rare circumstance when one can sue for malicious prosecution. *Crawford v. Euclid Nat'l Bank*, 19 Ohio St.3d 135, 135-37 (1985) (upholding law that seizure of property is necessary to maintain malicious prosecution lawsuit).

Second, MMP did not sue Bradley Machine for trade secret misappropriation or breach of contract. According to MMP's version of events, Bradley Machine is the wrongdoer because, according to MMP, Bradley Machine breached a notice provision by producing the settlement to Terves without giving MMP notice. If MMP wanted to honestly remedy a wrong, then it would have sued Bradley Machine. The fact that it did not do so, and only sued the parties that are threatening its supply of low-costing infringing materials confirms its bad faith intent to use litigation as a hammer to disrupt Terves' patent case and drive up Terves' attorneys' fees.

Third, MMP sued when there was no bona fide need to sue, and it maintained the lawsuit after testimony at the ex parte seizure hearing reinforced that there was no lawful reason or need to proceed with the lawsuit. Once MMP objected to Bradley Machine's subpoena response, McDonald Hopkins and Terves marked the response "Attorneys' Eyes

Only," and Terves' Andy Sherman testified that he deleted his copy of the settlement. (Tr. 45:3-46:24.) The seizure hearing also confirmed that Terves did not even know what in the settlement MMP claimed was trade secret, Terves had not used any information in the settlement for purposes other than the litigation, and Terves had not disclosed the settlement to any third parties. (*See* Tr. 35:23-36:3; 36:4-37:12; 36:4-37:12; 40:11-24; 45:3-46:24; 54:15-55:6; 62:9-23.) Although MMP never should have sued, after it lost the seizure hearing, it should have dismissed the case. The settlement was, and remains under Protective Order, and MMP suffered no harm. The fact that MMP proceeded full speed with the lawsuit and has now filed two appeals, despite the evidence and law weighing so heavily against its case, further confirms its bad faith intent to harm Terves and disrupt its patent case.

Fourth, in the patent case, Terves obtained samples of the materials that Ecometal imports to MMP, Terves' testing proves it infringes, and Terves has moved for a preliminary injunction. This is yet another reason that MMP filed the trade secret lawsuit: it has known all along that it and Ecometal are infringing, and they are desperate because they know an injunction may issue and their infringing business is in jeopardy.

Fifth, this is not the first time that MMP has shown disrespect for others' legal rights. MMP's co-owner and co-founder, Brian Wilkinson, was found personally liable by a jury for, ironically, stealing fracking-related trade secrets from his former employer Halliburton and using them to develop products for his own competing company, Axis Technologies, LLC. (*See Halliburton Energy Services, Inc. v. Axis Technologies, LLC and Brian Wilkinson*, Court of Appeals, Fifth District of Texas at Dallas (Aug. 21, 2014) (att'd as

Ex. A).) Rather than satisfy his legal obligation to pay the jury's verdict, Wilkinson filed bankruptcy to discharge the judgment debt owed to Halliburton.[3]

MMP sued with bad faith and lost; it should pay Terves' legal fees.

### III. MMP's counsel, Dunlap Codding, should pay fees under 28 U.S.C. § 1927.

28 U.S. § 1927 requires counsel who "multiplies the proceedings in any case unreasonably and vexatiously" to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Here, Terves would ordinarily not seek attorneys' fees from an opposing law firm. But this is no ordinary case, and the opposing law firm here, DC, brought this motion upon itself by recommending the hyper-litigious tactic that MMP file a meritless lawsuit against Terves and its law firm. Moreover, although there is no transcript of DC'S ex parte representations to the Court, Terves can only conclude that DC misstated the case to the District Court to obtain the extraordinary relief of a seizure order—an order that was vacated the next day when the Court heard the truth from Terves and its counsel.

While DC never should have recommending filing the lawsuit, there were several milestone events along the way at which any reasonable and non-vexatious attorney would have discontinued the case. Each time, rather than admit defeat, DC advised its client to proceed and further multiply the proceedings, notwithstanding that the legal claims had been found frivolous and had no factual or legal chance of surviving.

---

[3] Wilkinson's Bankruptcy Petition is attached as Exhibit B. Page 35 of that PDF document identifies the $713,300.51 judgment debt to Halliburton. Page 33 of the PDF identifies $504,981.55 that Wilkinson owed to Bradley Machine—the same Bradley Machine that produced the settlement on which MMP has sued.

First, after the ex parte seizure hearing, DC should have advised its client to dismiss the case. As a result of that hearing, this Court explicitly explained to DC and MMP why there was no valid legal claim. The alleged trade secret was exposed as nothing more than three words buried in the settlement that, according to MMP, did not correctly describe the alleged trade secret. Had those words even been noticed by Terves, they would have merely communicated that there is a "-- -- patent" out there somewhere, which MMP admitted was not true. Moreover, DC had an opportunity to examine Terves' President Andy Sherman under oath. Mr. Sherman's hearing testimony confirmed that he had done nothing wrong, hadn't even noticed the words on which MMP sued, deleted the settlement, and did not disclose it to any third-parties. (*See supra* at pp. 10-11.)

Instead of being satisfied that nothing bad resulted from Bradley Machine's alleged breach and accepting the fact that its clients had no legal claim, DC multiplied things by demanding that the trial court issue more detailed findings of fact and conclusions of law, requiring Terves to draft a motion to dismiss the frivolous claims, and now pushing two appeals. Perhaps DC cannot admit that its original advice to sue was wrong. But Section 1927 exists to force lawyers to look in the mirror and have difficult conversations with their clients. The statute incentivizes lawyers to discontinue litigation that has been exposed as frivolous, rather than multiplying the proceedings by exhausting every appeal and every available procedure to keep the case alive. Regardless of its reasons,[4] because DC vexatiously multiplied these proceedings, it should be responsible for the fees that

---

[4] *See Hall v. Liberty Life Assur. Co. Of Bos*ton, 595 F.3d 270, 275–76 (6th Cir. 2010) ("The proper inquiry is not whether an attorney acted in bad faith; rather, a court should consider whether 'an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'").

Terves incurred as a result. At a minimum, DC should pay for the fees that Terves incurred after the ex parte seizure order hearing confirmed that the case was both meritless and unnecessary.

## Conclusion

For these reasons, the Court should order MMP and its counsel Dunlap Codding, P.C. liable to Terves' for its attorneys' fees.

Respectfully submitted,

Dated: July 28, 2020

/s/ Matthew J. Cavanagh
David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Terves LLC*

## L.R. 7.1(f) Certification

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing memorandum complies with the applicable page limitation of 20 pages.

 s/ Matthew J. Cavanagh
*Counsel for Terves LLC*
