UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Magnesium Machine, LLC et al., | Case No. 1:19-cv-2818 |
| Plaintiffs, | |
| | Judge Donald C. Nugent |
| vs. | |
| Terves, LLC et al., | |
| Defendants. | |

### Terves, LLC's Reply Brief in Support of Motion for Attorneys' Fees

MMP's opposition to Terves' fee motion confirms the need for a fee award against MMP and its counsel to stop their relentless litigation abuses. MMP's opposition proves that MMP and its counsel are willing to invent facts to run up Terves' legal fees and continue their campaign of legal harassment. The Court should award fees to send a strong message that such litigation tactics are way out of bounds and will not go unpunished.

**I.     The Court should not defer ruling on Terves' fee motion.**

MMP begins by urging this Court to punt on the attorney fee issue until after its appeals are over. (Opp. 1, 4-5.) MMP says this is "in the interest of judicial economy." (Opp. 5.) The Court, however, should rule now and grant the motion for at least two reasons.

First, it is more efficient to rule now to allow any appeal on the attorney fee issue to be heard and decided by the Sixth Circuit with the other appeals that MMP has filed.[1] Thus, the Sixth Circuit can decide everything at once and an across-the-board affirmance

---

[1] While MMP filed two appeals, today, the Sixth Circuit dismissed the first appeal as moot.

would end the case, potentially without the need for a remand. Whereas denying Terves' motion without prejudice pending appeal would guarantee a remand and potentially another appeal after the Court rules on a post-appeal fee motion.

Second, awarding fees now, as opposed to later, would hopefully serve as a wake-up call to MMP and its counsel and deter them from continuing their full-court press of this baseless lawsuit, their heroic measures keeping the case on life support, and their fictitious, lawyer-created narrative that McDonald Hopkins and Terves engaged in "misrepresentations" and a "cover-up."

## II. Terves is entitled to fees under the three trade secret statutes.

### A. MMP admits Terves is the prevailing party.

MMP does not dispute that Terves is the prevailing party under all three trade secret laws. The only question, therefore, is whether MMP sued in bad faith.

### B. The Court should reject—for the third time—MMP's claims that its lawsuit was justified.

MMP argues that its claims were not objectively specious—which demonstrates bad faith—because "they present plausible allegations of misappropriation." (Opp. 7.) This Court, however, already ruled twice that MMP did <u>not</u> state plausible allegations of misappropriation. The Court should once again reject this argument for the same reasons that it dismissed MMP's complaint and vacated the seizure order.

Indeed, even if MMP had a plausible allegation of misappropriation—which the Court correctly ruled it did not—the claims were still barred by the litigation privilege. MMP brushes that doctrine aside by claiming it "had never specifically been extended to cover trade secret misappropriation." (Opp. 8.) That is false. While the *Stork-Werkspoor*

case cited repeatedly by Terves may not have invoked the litigation privilege by name, it applied the privilege in substance as it held that obtaining discovery in litigation cannot, as a matter of law, constitute trade secret misappropriation. *See Stork-Werkspor Diesel V.V. v. Koek*, 534 So.2d 983, 10 U.S.P.Q.2d 1249 (La. Ct. App. 1988). Moreover, if no prior court applied the privilege by name to these circumstances, that is only because no one before MMP thought it was a good idea to sue for trade secret misappropriation over a party's receipt of unrestricted discovery in litigation. This only supports Terves' fee motion as it confirms the unprecedented and extraordinary nature of MMP's lawsuit.

MMP and its counsel should have know that, if people could sue parties over receipt of alleged trade secrets in discovery, then someone before MMP would have sued on that basis and won. The fact that MMP and Dunlap Codding could not find a single legal case that allowed a trade secret claim to proceed based on the receipt of discovery in litigation should have been a red flag. Indeed, MMP's and Dunlap Codding's home state of Oklahoma bars any lawsuit, regardless of the cause of action asserted, that is based on allegations of litigation misconduct. (*See* Terves' Reply 7; *see Patel v. OMH Med. Center, Inc.*, 987 P.2d 1185, 1201-03 (Okl. 1999) ("no civil remedy is available for litigation-related misconduct"). Again, they knew or should have known that the law barred their claims. They certainly know it now, and yet continue to push the case on appeal in bad faith.

Unable to win on the facts or law, MMP resorts to its smear campaign of accusing McDonald Hopkins of "misrepresentations" and a "cover-up." These conspiracy-theory accusations are pure fiction, and more evidence of vexation, for at least three different reasons.

First, the Court rejected these same accusations as untrue twice: first, when it dissolved the seizure order and, second, when it dismissed the complaint.

Second, these accusations are contrary to the evidence presented at the ex parte seizure hearing and contrary to MMP's own pleading. McDonald Hopkins did exactly what it said it would do when MMP objected that Bradley produced the settlement: it quarantined the document by having its client Terves delete it, it designated the settlement as "Attorneys' Eyes Only" under Protective Order where it securely resides to this day, there's been no use of the information for purposes other than the litigation, and there's been no disclosure to any third-parties. Thus, there was no cover-up or misrepresentations; only MMP twisting the defendants' good faith and honest efforts to help MMP mitigate the alleged harm caused by Bradley's alleged breach of the settlement.

Third, MMP's cover-up theory doesn't add up because there was no act of trade misappropriation by Terves or McDonald Hopkins. Hence, there was nothing to cover up.

Fourth, MMP's cover-up accusations are built on false statements, proving again that MMP cannot keep track of its own pleaded facts and will say almost anything to keep the case going. For example, MMP says "McDonald Hopkins chose not to inform Ecometals [sic] that it had actually served early subpoenas." (Opp. 2.) Yet the very paragraphs of its complaint that MMP cites prove the opposite: that McDonald Hopkins **did** inform Ecometals that it would be serving a subpoena upon Bradley. (*See* Opp. 2; Compl. ¶ 26 ("On October 7, 2019, McDonald Hopkins also served the Ecometal Defendants with notice of Terves's intent to serve a subpoena on third-party Bradley Machine …").) As another example, MMP warns this Court to take "pause" at the fact that

McDonald Hopkins did not join in Terves' fee motion (Opp. 2), as if McDonald Hopkins' shunned Terves' motion. The simple innocent reason that McDonald Hopkins did not seek fees is because, as MMP knows, it self-defended with its own firm's attorneys, so no fees. This is a tattered page from the MMP playbook: take innocent facts, twist them with snappy lawyer-written prose, and try to create the illusion of wrongdoing where none exists.

MMP's lawsuit was objectively specious and is fee-worthy.

### C. MMP's ex post facto explanations for its lawsuit do not overcome the evidence of bad faith.

MMP's attempt to overcome the evidence of bad faith are not well taken. At the ex parte seizure hearing, MMP learned that it had no legal claim and learned, factually, that nothing bad had happened with its alleged trade secret. More specifically, MMP had an opportunity to examine Terves' President Andy Sherman and learned that: (a) he did not even notice the alleged trade secret, let alone do anything with it, (b) he did not disclose the settlement to any third-parties, and (c) had deleted it. For MMP to continue with its lawsuit after that could only have been driven by a bad faith intent to harass Terves, run up its fees, and distract it from the patent case against its supplier, Ecometal.

As to MMP's claim that it did not seek to shutdown the Terves business by seeking broad seizure relief, this claim is contrary to the seizure motion itself which sought to seize and inspect *all* computers, computer hard drives, user names, passwords, etc. to see if they "reveal that they contain" the alleged trade secrets. (*See* Motion at p. 11.) The Court also read MMP's motion this way: "Plaintiffs actually asked for all of your computers in your office." (Tr. 118:12-17.) Had MMP succeeded in having all the computers seized, or

had it succeeded in maintaining what was seized (*i.e.*, Mr. Sherman's cell phone and laptop), Terves' business would have halted. (*See* Hearing Tr. 48:18-49:23 (Sherman testifying that his laptop has everything on it and he "can't do business without it").)

MMP says it didn't sue Bradley—the true culprit according to MMP—because it still has "plenty of time." (Opp. 9.) As to why it sued Terves at this time, it says it had "no mechanisms in place—contractual or otherwise—to keep Terves from further disseminating that trade secret." (Opp. 9.) This is untrue. Before MMP sued, Terves had deleted the settlement, and McDonald Hopkins had placed the settlement under protective order with an "Attorneys' Eyes Only" designation. So there was the strongest of "mechanisms in place … to keep Terves from further disseminating the trade secret": the Court's order, its contempt powers of enforcement, and the fact that Terves' employees no longer had access to the document (so they could not further disseminate it).

MMP's claim that it had no "standing" to enforce this Court's Protective Order because it was not a party to the patent case is simply not true. This is evidenced by MMP's failure to cite a single legal authority for that proposition. (Opp. 8.) The Protective Order itself states that it "shall apply to non-parties," so MMP's argument contradicts the plain language of the Protective Order itself. (Protective Order ¶ 12, ECF #21.) And Federal Rule of Civil Procedure 71 allows non-parties to enforce Court orders that grant them relief as if they were parties.

Indeed, MMP's theory that Protective Orders provide no protection to non-parties, if adopted, is not only dismissive of this Court's contempt power, but also upends decades of caselaw that rely on protective orders to protect the disclosure of trade secrets in

discovery. MMP's claim that the Protective Order is toothless is especially weak when MMP's lawyers are the same lawyers that represent Ecometal in the patent lawsuit, so they would have had no difficulty raising any issues with the Protective Order with the Court. The truth is that there was never even a threat of a violation of the Protective Order, and Ecometal, MMP, and Dunlap Codding all know it.

Terves has shown more than enough evidence that MMP sued and maintained this case with bad faith intent to harm Terves. The Court should award fees.

### III. Dunlap Codding does not rebut that it unreasonably and vexatiously multiplied the proceedings.

Dunlap Codding's arguments against fees under 28 U.S.C. § 1927 are the same false and meritless arguments that it has repeated many times in this case: it had no choice but to sue, it acted reasonably, McDonald Hopkins and Terves stole trade secrets and engaged in a "cover-up," etc. This Court has already rejected all of these arguments as contrary to MMP's own pleading, the facts, and the law. There's no need for Terves to go through all the reasons why Dunlap Codding is wrong for a third or fourth time. Terves instead relies on the hearing transcript, the Court's Findings and Conclusions dissolving the seizure order, briefing on Terves' motion to dismiss, and the Court's order dismissing the case for explaining why MMP's attorneys are wrong on all these points.

It is insulting, vexatious, nonsensical, and far out of bounds for Dunlap Codding to still be arguing that McDonald Hopkins and Terves conspired to obtain trade secrets by subpoena when they had no idea what Bradley Machine would produce, Bradley produced the settlement without restriction, neither Terves nor McDonald Hopkins had any idea what MMP claimed was trade secret until the seizure hearing, the alleged trade

secret was a mere three words that no one in the world would ever think was trade secret because it referenced a "patent," there is no evidence whatsoever that they did anything with the settlement that could possibly be considered a misappropriation, and Terves deleted the settlement and placed it under Protective Order when MMP objected. The fact that these attorneys continue to argue that a misappropriation occurred based on false lawyer-written narratives, despite everything else proving that Terves and its counsel are innocent, itself proves that the Dunlap Codding law firm is multiplying this proceeding vexatiously and unreasonably.

Dunlap Codding should be responsible for the excessive fees that it caused Terves to incur under § 1927.

## **Conclusion**

For these reasons and those offered in prior briefing, the Court should order MMP and its counsel Dunlap Codding, P.C. liable to Terves for its attorneys' fees.

                                                              Respectfully submitted,

Dated: August 18, 2020                 s/ Matthew J. Cavanagh
                                                       David B. Cupar (OH 0071622)
                                                       Matthew J. Cavanagh (OH 0079522)
                                                       MCDONALD HOPKINS LLC
                                                       600 Superior Avenue, East, Ste. 2100
                                                       Cleveland, Ohio 44114
                                                       t 216.348.5400 | f 216.348.5474
                                                       dcupar@mcdonaldhopkins.com
                                                       mcavanagh@mcdonaldhopkins.com

                                                       *Counsel for Terves LLC*

## L.R. 7.1(f) Certification

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing memorandum complies with the applicable page limitation of 20 pages.

 s/ Matthew J. Cavanagh  
*Counsel for Terves LLC*
