UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAGNESIUM MACHINE, LLC, *et al.*, | ) | CASE NO. 1:19 CV 2818 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| TERVES, LLC, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendant Terves LLC's Motion For Attorneys' Fees. (ECF #62). They seek an award against Plaintiffs under the trade secret act and an award against Plaintiffs' counsel pursuant to 28 U.S.C. § 1927. Plaintiffs' filed an Opposition, and Defendant, Terves filed a Reply in support of its Motion. (ECF # 63, 64). The matter is now fully briefed and ripe for the Court's consideration.

I. <u>Plaintiffs' Liability for Attorney's Fees</u>

The parties agree that the Ohio, Oklahoma and U.S. Defense of Trade Secrets Acts all permit a court to award reasonable attorneys' fees to a prevailing party if it finds that a misappropriation claim is brought in "bad faith." Ohio Rev. Code § 1333.64(A); 78 Okl. Stat. §89(1); 18 U.S.C. § 1836(b)(3)(D). Bad faith is defined slightly differently under each of these

respective laws. Courts find bad faith in trade secret cases when claims are objectively specious,[1] having no chance of success under existing law; or, when an action is oppressive, abusive, or wasteful, or has a party acts with a dishonest purpose, ill will or intent to mislead or deceive. *See, e.g., Degussa Admixtures, Inc. v. Burnett*, 277 Fed. Appx. 530, 534 (6th Cir. 2008); *Am. Chem. Soc'y v. Leadscope* 2010 Ohio App. LEXIS 2244, *P84-85; *Vanguard Envtl., Inc. v. Kerin*, 528 F.3d 756, 759 (10th Cir. 2008)(quoting *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1099 (Okla. 1996); *Akira Techs., Inc. v. Conceptant, Inc.*, 773 F.App'x 122, 125 (4th Cir. 2019).

This action meets the definition of bad faith under the trade secret statutes. The circumstances leading up to the filing of this claim, as well as the extraordinary means by which Plaintiffs attempted to prosecute the case lead the Court to find that the Plaintiffs acted with an improper motive. Plaintiffs had every reason to know that their claim was baseless. Further, they were not fully forthcoming to the Court when seeking ex parte emergency relief, and acted in an oppressive, abusive, and wasteful manner in the prosecution of the claim.

According to Plaintiffs' Opposition to the Motion for Attorney Fees, they brought the suit because of Defendant McDonald Hopkins' "mishandling of confidential third-party discovery

---

[1] Plaintiff argues that Ohio has rejected the "objectively capricious" standard for awarding attorney fees under Ohio's Trade Secret Act. This is not true. In actuality, the holding in *Alice's Home v. Childcraft Edn. Corp.*, 2010-Ohio-4121(cited by Plaintiff in support of their argument) adopted the reasoning in *Am. Chem Soc'y v. Leadscape*, 2010 Ohio App. LEXIS 2244, which did not eliminate this standard but broadened it. Objectively capricious actions still meet the definition of bad faith, but now this stringent threshhold need not be met in order to recover attorneys' fees. Rather fees may also be recovered if the accused party brings an action for a dishonest purpose, with ill will comparable to fraud, intent to mislead or deceive, or other ulterior motives, even if the claim is colorable and not completely without substance or devoid of merit.

2

documents and the cover-up of that subsequent mishandling." (ECF #63). The harm they allege is that "highly-skilled employees of a potential direct competitor of Plaintiffs were in possession of Plaintiffs' confidential trade secrets for at least five weeks." Mishandling of confidential third-party discovery does not equate to misappropriation of a trade secret. Plaintiffs were well aware at the time the suit was filed that Defendants had received the allegedly secret information through legitimate discovery means and that it was provided to them without restriction. They were also aware that the information had been shared with two of the client's employees but had not been distributed further. In addition, Plaintiffs notified Defendants of the allegedly secret nature of the information, before filing suit, and Defendants communicated with the Plaintiffs and voluntarily took measures to protect the information from further distribution, deleting all copies of the information in the client's possession, and marking the information as "attorneys eyes only" to ensure confidential treatment under the Local Patent Rules. (ECF #1-9, 1-14, 1-17). In other words, Plaintiffs knew, before they filed this action, how the information had been obtained, exactly who had seen the information, and that the information had since been restricted.[2] They also knew, therefore, that they could not prove the elements of a trade secret misappropriation case because the information had been obtained by legal means, was not restricted under the rules, had not been shared beyond the attorney who legally obtained the information and his client, and there was no factual basis to argue that it had been used for any improper reason. Further, even if Plaintiffs could argue some uncertainty about these issues at

---

[2] Defendants notified Plaintiffs on or before November 20, 2019 that the document at issue had been provided to two Terves employees; that those employees had deleted their copies; and, that the document would be treated as "Attorneys' eyes only" from that point forward. This lawsuit was filed on December 4, 2019.

the time they filed the Complaint, they could not argue ignorance following the hearing on the ex parte seizure order. All of the information that Plaintiffs knew, or should have suspected, would defeat their claims was confirmed at the hearing. Plaintiffs have never contended that there is any evidence to contradict the information presented at that hearing, and they had no basis for continuing the lawsuit beyond that point.

Perhaps even more significant is that the information Defendants received by way of the Settlement Agreement did not contain any of the secrets Plaintiffs claimed were a part of its Trade Secret Products and Methods. The Complaint alleges that a Settlement Agreement obtained by the Defendants during discovery contained its Trade Secret Products and Methods.[3] (ECF #1, ¶34). However, the phrase in the Settlement Agreement that Plaintiffs have since claimed to be the trade secret at issue does not, on its face, appear to be secret at all.

The Complaint, the Motion for Ex Parte relief and the Opposition to Defendants' Motion to Dismiss all discuss MM Trade Secret Products and Methods, which are allegedly proprietary and which Plaintiffs have allegedly taken care to keep secret. (ECF #1, 8-1, 47). The Complaint indicates that the Trade Secret Products and Methods were disclosed in the Settlement Agreement provided during discovery while the Motion for Ex Parte relief refers separately to the Settlement Agreement and the MM Trade Secret Products and Methods. In either case, the three word phrase that Plaintiffs identified as the basis for their "trade secret" claim during the forfeiture hearing does not disclose any such products or methods. The representation in the

---

3

"MM Trade Secret Products and Methods" is defined in the Complaint as "proprietary products including dissolving magnesium slips and balls" and "a proprietary method of selectively degrading downhole tools in a subterranean formation, where at least a portion of the downhole dissolvable tool is contacted with a salt-based treatment."

4

Complaint that this phrase equates to a disclosure of "MM Trade Secret Products and Methods" is an intentional exaggeration/misrepresentation of the alleged disclosure at issue. Further, the arguments made in favor of their Motion for Ex Parte relief, which implied that Plaintiffs' employees were known to have been in possession of secret products and methods was a calculated overstatement of the information known to have been disclosed.

At the forfeiture hearing, Plaintiffs initially balked at specifically identifying the alleged trade secret upon which their claim was based. Once pressed, the passage they claim to be the disclosed "trade secret" is a three word phrase ending in the word "patent." This phrase is far less descriptive of Plaintiffs allegedly proprietary products and methods than the explanations described in Complaint and other public briefings. (ECF #1, ¶17). There is no reason, that upon seeing the phrase "----- ----- patent" in a settlement agreement, Defendants would have assumed they were in possession of a trade secret. The most this information discloses is the existence of a patent involving the preceding general descriptor. Patents by their nature are public rather than secret, which means that if the disclosed patent existed, the information would already be publically known. Moreover, Plaintiffs have admitted that this phrase does not even correctly describe the information they claim to be secret, and that there is no such patent in existence. In short, Plaintiffs' claim that MM Trade Secret Products and Methods were ever disclosed is at best intentionally misleading, and at worst, intentionally deceptive. The Court, therefore, finds by clear and convincing evidence, for the reasons set forth above, that this case was prosecuted in bad faith.

II. <u>Counsel's Liability for Attorneys' Fees</u>

Counsel who "multipl[y] the proceedings in any case unreasonably and vexatiously" can be required to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 United States Code §1927. There need be no showing of bad faith in order for a party to recover fees under this provision, however "[t]here must be some conduct on the part of the subject attorney that trial judges applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *In re Ruben*, 825 F.2d 977 (6th Cir. 1987).

Plaintiffs attorneys should have known that the disclosed phrase, and the circumstances surrounding its inadvertent disclosure could not possibly satisfy the elements of a trade secret misappropriation claim. Nonetheless, not only did they support the filing of this claim, but they asked the Court for truly exceptional relief in the form of an ex parte forfeiture order, which the Court granted. Relying on the representations of Plaintiffs' counsel, the order directed the U.S. Marshal to immediately seize the personal and professional electronic devices of a Terves employee. In arguing for this relief, Plaintiffs seriously overstated the nature and value of the information that Defendants allegedly obtained. Although they knew the alleged disclosure included nothing more than the three word phrase, constituting a general descriptor of a patent subject, they represented that the employee had access to MM Trade Secret Products and Methods. Further, Plaintiffs failed to account for Defendants' prior representations that the information had already been deleted from the employee's files.

The forfeiture hearing, which took place the day after the Terves employee's devices had

6

been seized, revealed the true substance of the disclosure: the three word phrase apparently referencing a patent that did not exist. The hearing also verified that the document containing this alleged secret was received from a third party through legal discovery; that it was already being treated as "attorneys' eyes only;" that its distribution was limited to two Terves employees; and, that all copies of the document had since been deleted or destroyed. The evidence of these facts was undisputed. This should have ended the case. Nonetheless, Plaintiffs continued to push the case forward, arguing, without basis, that the document contained a protectable trade secret and that Defendants misappropriated the information. This refusal to back down in the face of undisputed evidence which precluded Plaintiffs' recovery unreasonably and vexatiously multiplied the proceedings in this case. Defendants were subjected to harassment, interference, and intrusion into their professional and personal lives by way of the ex parte forfeiture order Plaintiffs sought and obtained based on their misleading representations. Further, they were required to defend baseless claims and re-brief issues that had already been determined. For these reasons they are owed attorneys fees not only by Plaintiffs but by Plaintiffs' counsel, Dunlap Codding.

## CONCLUSION

As set forth in more detail above, Plaintiffs behavior as a party in this litigation has been less than fully professional or forthright, and their positions have not been based on a reasonable factual or legal interpretation of the actual circumstances at issue. Further, their attorneys have unreasonably and vexatiously multiplied the proceedings in this litigation. The Court finds that Defendant, Terves' request for the imposition of attorney fees well supported, and that Plaintiffs

and their attorneys shall be jointly and severally liable for those fees. For the reasons set forth above, Defendant Terves, LLC's Motion for Attorneys' Fees (ECF #62) is GRANTED. Terves shall have fourteen days to submit proof of the value of the fees incurred. Plaintiffs shall have seven days to submit any objection they may have to the proof submitted by Plaintiffs. IT IS SO ORDERED.

/s/ Donald C. Nugent
Judge Donald C. Nugent
Senior United States District Judge

DATED: September 9, 2020